HARRY J. HORAK, JR., Plaintiff-Appellant, v. DEAN BIRIS, Defendant-Appellee.

Second District No. 84—33

Opinion filed January 23, 1985.

 

Clifford E. Lund, of Schaffner & Associates, Chartered, of Dundee, for appellant.

Francis A. Spina and Jay H. Tressler, both of McKenna, Storer, Rowe, White & Farrug, of Wheaton, for appellee.

JUSTICE HOPF delivered the opinion of the court:

In this appeal we are asked to recognize a cause of action for social worker malpractice under the facts presented in this case. Plaintiff, Harry J. Horak, Jr., filed a six-count amended complaint essentially alleging negligence and malpractice (counts I through IV) and breach of contract (counts V and VI) against defendant Dean Biris, a certified social worker, for defendant's having had sexual relations with plaintiff's wife during the course of marital counseling sought by the Horaks. Counts I through IV of the complaint were dismissed by the circuit court of Kane County based upon a Fourth District opinion, *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6, which refused to recognize the tort of social worker malpractice under facts similar, if not identical, to those in the instant case. Plaintiff appeals from the dismissal of these counts, urging us to reject the reasoning in *Martino*. We note that counts V and VI were voluntarily nonsuited and a final and appealable order was issued as to counts I through IV.

Counts I through IV, although based on different theories, alleged the following essential facts in common: (1) that in February 1978, defendant held himself out to the general public as an expert in the field of psychology and mental therapy, and held himself out to professionally counsel individuals, couples, and groups for emotional problems, marriage difficulties, and other conditions which were treatable by the use of psychotherapy, psychiatric techniques, and mental therapy; (2) that on or about February 1978, defendant began to provide psychological counseling and psychiatric and mental therapeutic care for Dorothy Horak, plaintiff's then-wife; (3) that during his counseling defendant obtained significant information from plaintiff's wife about the personal profile of plaintiff and the Horak's marital relationship; (4) upon defendant's request and relying upon defendant's reputation

in the community as a qualified psychological or mental therapist, plaintiff began a course of treatment with the defendant in October 1978, which treatments continued until March 1980 and were paid for by contractual arrangement costing approximately $170 per month; (5) that during this period, defendant had a close and confidential relationship with the plaintiff and that plaintiff therefore communicated numerous confidential facts about his life, personality, and marriage to the defendant; (6) that defendant administered a course of treatment ostensibly to cure and aid the plaintiff's sense of ill-being, but which was not in accordance with generally accepted standards of psychological, psychiatric and therapeutic care; and, (7) that defendant owed a duty to plaintiff to perform a course of treatment calculated to lead to the alleviation of plaintiff's condition of ill-being.

Counts I and IV, based upon theories of negligence and malpractice, further alleged that in violation of defendant's aforementioned duty, defendant committed numerous negligent acts or omissions, including the following: (1) failed to inform plaintiff that a conflict of interest existed in counseling both the plaintiff and his wife; (2) failed to terminate therapy with the plaintiff as soon as he realized that a conflict of interest existed; and (3) failed to understand and guard against the transference phenomenon which occurs between psychotherapists and their patients.

Counts II and III, based respectively upon wilful and wanton and intentional conduct, alleged that defendant committed one or more of the following acts: (1) failed to provide treatment calculated to lead to the alleviation of plaintiff's condition of ill-being; (2) appeased defendant's own self-interest, in disregard and in violation of professional standards and in detriment to plaintiff's condition; (3) caused plaintiff's condition of ill-being to deteriorate while under defendant's care without providing any psychological, psychiatric or mental therapeutic treatment; and (4) began and allowed a course of treatment to continue that was of such a nature as to do great harm to plaintiff's condition of ill-being. We note that plaintiff's original two-count complaint, based upon theories of breach of fiduciary relationship and malpractice, also alleged that defendant became emotionally and romantically involved with plaintiff's then-wife, had sexual relations with her, and thereafter continued to counsel plaintiff. The act of sexual involvement with plaintiff's wife was not specifically alleged in the amended complaint but was alluded to in plaintiff's allegation regarding the transference phenomenon in counts I and IV. This allegation will be further discussed later in this opinion.

Defendant's motion to dismiss was originally filed in response to

plaintiff's initial complaint and sought to dismiss count II of that complaint, which alleged malpractice, on the basis of the *Martino* decision. By court order, the motion was allowed to stand as to counts I, II and IV of plaintiff's amended complaint. In answer to count III (alleging intentional conduct) and count V (alleging breach of contract), defendant admitted that he held himself out as a psychotherapist available for professional consultation, that he was a licensed psychotherapist registered with the State of Illinois, that he requested a consultation with the plaintiff, that plaintiff demonstrated a need for psychotherapy, that services were contracted for by plaintiff, that payment for such services was made, and that defendant administered a course of treatment for plaintiff's benefit. Defendant essentially denied all other allegations, including the allegation that the treatments were either psychological or psychiatric in nature. Additionally, on appeal defendant stated that at the time in question he operated a facility called the "Center for Psychotherapy" where he performed services described as "psychotherapy."

In dismissing the counts in question, the circuit court noted that although it was bound by the Fourth District's opinion in *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6 (see *People v. Collings* (1981), 95 Ill. App. 3d 325, 329, 420 N.E.2d 203), it disagreed with the reasoning of that case. We have reviewed the *Martino* decision and agree with the circuit court that the tort of social worker malpractice should be recognized under the facts presented here.

In *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6, the plaintiff, Janet Martino, filed a five-count complaint against the Family Service Agency of Adams County (Family Service) and Jane Balke, the chief executive officer of Family Service, essentially alleging that plaintiff and her husband sought and received marital counseling services from Family Service, that defendant Balke was assigned to and did counsel plaintiff, and that during this period Balke: (a) used against plaintiff's interest information obtained by Balke from plaintiff during counseling, (b) revealed those confidences to others, (c) fell in love with plaintiff's husband, pursued him, and engaged in "intimate relations" with him, and (d) after developing this conflict of interest failed to either inform plaintiff of the conflict or terminate her counseling relationship with plaintiff. (112 Ill. App. 3d 593, 594-95, 445 N.E.2d 6.) Respecting her malpractice claim, Mrs. Martino argued that the situation was analogous to the medical profession, where a breach of duty has been held to arise from a psychiatrist's having intercourse with his patient as part of her prescribed

therapy (*Roy v. Hartogs* (1976), 85 Misc. 2d 891, 381 N.Y.S.2d 587), and a hospital's negligent failure to abide by licensing regulations (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253). Plaintiff also urged the court to consider the code of ethics adopted by the National Association of Social Workers, which would have been violated by defendant Balke's conduct.

While noting that there was an inference arising from numerous authorities that the tort of malpractice is applicable to one engaged in the profession of social work, the *Martino* court nevertheless was unwilling to recognize such a tort, "at least when it arises from conduct not intended to harm." (112 Ill. App. 3d 593, 597, 445 N.E.2d 6.) The court stated:

> "Although the conduct alleged here was clearly improper, determination of the propriety of conduct of social workers and the relationship it might have to injury suffered by clients generally would be most difficult to ascertain. The damages a client might receive from the improper practice of social work are unlikely to be pecuniary in nature and extremely unlikely to be physical in nature." (112 Ill. App. 3d 593, 597, 445 N.E.2d 6.)

The court then concluded that in the absence of Illinois precedence there was "no compelling policy reason to initiate the recognition of the tort of social worker malpractice for unintended 'hurts' most of which we deem likely to be 'slight hurts which are the price of a complex society.' " 112 Ill. App. 3d 593, 597, 445 N.E.2d 6, quoting *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 85, 174 N.E.2d 157, 164.

■ Contrary to the reasoning set forth in the *Martino* decision, we believe that the facts alleged and admitted in the instant case are sufficient to establish a cause of action for social worker malpractice. "Malpractice" is defined in Black's Law Dictionary 1111 (rev. 4th ed. 1968), as "[a]ny professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct." The elements necessary to establish a malpractice action are the same elements required of any negligence case. (See, *e.g., Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 677, 303 N.E.2d 146.) Thus, plaintiff must plead: (1) that defendant owed him a duty, (2) that defendant failed to perform or breached that duty, (3) that the breach was the proximate cause of plaintiff's injuries, and (4) damages. (14 Ill. App. 3d 672, 677, 303 N.E.2d 146.) Whether a duty exists is a question of law to be determined by the court, but whether the duty is properly performed by defendant is a fact question to be decided by the trier of fact. (*Johnson v. Hoover Water Well Service* (1982), 108 Ill. App. 3d 994, 1003, 439 N.E.2d 1284.) A person's duty

to act with reasonable care does not extend to the world at large, but, rather, is defined and limited by various considerations such as the relation between the parties, the gravity and foreseeability of the harm, the utility of the challenged conduct and the burden of guarding against the injury. *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 105-06, 440 N.E.2d 253.

We believe the facts alleged in the instant case, if proved, sufficiently establish a duty owed by defendant Biris to plaintiff Horak and a subsequent breach of that duty by defendant. It was alleged that plaintiff went to defendant's office, at defendant's request, to receive counseling and guidance in his personal and marital relationships, ostensibly for the purpose of improving those relationships. Defendant held himself out as a social worker licensed by the State to render such assistance and insight. His license placed him in a position of trust, the violation of which would constitute a breach of the fiduciary relationship. Such a breach has been held on several occasions to be an actionable and independent tort. (See *Allabastro v. Cummins* (1980), 90 Ill. App. 3d 394, 399, 413 N.E.2d 86; *Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 381 N.E.2d 821; but see *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 596, 445 N.E.2d 6, suggesting that a breach of fiduciary relationship is not an actionable tort.) Further, we think that the very nature of the therapist-patient relationship, which was alleged and admitted here, gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient.

Regarding a breach of defendant's duty to plaintiff, we reiterate that the question whether the duty is properly performed is a fact question to be decided by the trier of fact. (*Johnson v. Hoover Water Well Service* (1982), 108 Ill. App. 3d 994, 1003, 439 N.E.2d 1284.) We believe plaintiff alleged sufficient facts which, if proved and believed by the trier of fact, would establish a breach of defendant's duty to refrain from conduct that is detrimental to plaintiff's well-being. Defendant operated a facility known as the "Center for Psychotherapy," where he performed counseling services defined as "psychotherapy." He allegedly held himself out as possessing a certain expertise in the counseling and treatment of emotional and social problems. Accordingly, defendant was required to exercise that degree of skill and knowledge normally possessed by members of the social work profession practicing in the same field. (See Restatement (Second) of Torts

sec. 299A (1965).) We note that the field of practice engaged in by defendant here more closely resembles the practice of psychology rather than social work, as those two practices are currently defined in the Illinois Revised Statutes. (See Ill. Rev. Stat. 1979, ch. 111, pars. 5304, 6302.) Because of the apparent overlapping of these two fields, we think the proofs may well reveal that defendant possessed or should have possessed a basic knowledge of fundamental psychological principles which routinely come into play during marriage and family counseling. The "transference phenomenon" is apparently one such principle, and has been defined in psychiatric practice as "a phenomenon *** by which the patient transfers feelings toward everyone else to the doctor, who then must react with a proper response, the countertransference, in order to avoid emotional involvement and assist the patient in overcoming problems." (*Aetna Life & Casualty Co. v. McCabe* (E.D. Pa. 1983), 556 F. Supp. 1342, 1346.) The mishandling of this phenomenon, which generally results in sexual relations or involvement between the psychiatrist or therapist and the patient, has uniformly been considered as malpractice or gross negligence in other jurisdictions, whether the sexual relations were prescribed by the doctor as part of the therapy, or occurred outside the scope of treatment. (See *Roy v. Hartogs* (1976), 85 Misc. 2d 891, ___, 381 N.Y.S.2d 587, 588; *Zipkin v. Freeman* (Mo. 1968), 436 S.W.2d 753, 762; *St. Paul Fire & Marine Insurance Co. v. Mitchell* (1982), 164 Ga. App. 215, 296 S.E.2d 126; *Cotton v. Kambly* (1980), 101 Mich. App. 537, 300 N.W.2d 627; *Aetna Life & Casualty Co. v. McCabe* (E.D. Pa. 1983), 556 F. Supp. 1342.) Accordingly, we believe that plaintiff's allegation of a mishandling of the transference phenomenon sufficiently alleges a breach of the defendant's duty here.

■ In this regard, we reject defendant's assertion that plaintiff lacks standing to proceed on a malpractice action because the acts and/or omissions complained of were directed only to plaintiff's wife and not to plaintiff. Liability in tort is generally determined by the scope of the duty owed rather than by artificial concepts of privity. (*Agee v. First National Bank* (1979), 68 Ill. App. 3d 794, 798, 386 N.E.2d 899.) Thus, the lack of a direct contractual relationship between the parties is not a defense in a tort action. (68 Ill. App. 3d 794, 798, 386 N.E.2d 899.) Here, both the plaintiff and his wife were patients of the defendant, apparently for the common purpose of rehabilitating their marital relationship. Thus, the treatment of each of the spouses would reasonably have an effect upon the other spouse and the prospects of improving the couple's marriage. To this extent, any malpractice committed by the defendant in the treatment of

plaintiff's wife would clearly have an impact upon the plaintiff as well. See *Anclote Manor Foundation v. Wilkinson* (Fla. App. 1972), 263 So. 2d 256, and *Andrews v. United States* (4th Cir. 1984), 732 F.2d 366, both permitting recovery by the patient's husband for the therapist's malpractice towards the wife-patient.

▊ Insofar as damages are concerned, it is clear that if plaintiff can prove defendant's malpractice, if any, was the result of intentional conduct (as alleged in count III of plaintiff's complaint) the plaintiff would be entitled to recover for emotional distress pursuant to *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. Plaintiff in any event would be entitled to recover actual damages, including loss of consortium. See *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 427, 170 N.E.2d 881, dealing with recovery for loss of consortium in a negligence action.

In recognizing a cause of action for social worker malpractice under the facts presented in this case, we note that our legislature has provided for revocation of a social worker's license if he or she is found to be "unfit or incompetent by reason of gross negligence in the practice of social work." (Ill. Rev. Stat. 1979, ch. 111, par. 6315(b).) A similar provision exists for the revocation of a psychologist's license. (See Ill. Rev. Stat. 1979, ch. 111, par. 5316(2).) Additionally, a social worker is required to be registered in Illinois pursuant to the Social Workers' Registration Act (the Act), in order to use the title "social worker." (Ill. Rev. Stat. 1979, ch. 111, par. 6301 *et seq.*) Defendant in the present case is a "certified social worker," and thus must meet certain educational requirements as prescribed in the Act. (See Ill. Rev. Stat. 1979, ch. 111, par. 6307.) Also, the legislature was mindful of the concept of a social worker malpractice cause of action. They provide in section 20 of the Act (Ill. Rev. Stat. 1979, ch. 111, par. 6324), "No social worker may disclose any information, \*\*\* except: \*\*\*, (2) in actions, civil or criminal, against the social worker for malpractice \*\*\*."

We believe these provisions, not discussed in the *Martino* decision, indicate that the legislature of this State is concerned with the quality of service rendered by the social work profession, even to the extent of providing for procedures to eliminate certain "incompetent" social workers from the practice of social work. Further, these provisions, along with the code of ethics apparently adopted by the National Association of Social Workers (see *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6), make it clear that certain minimum standards of professional conduct do exist for social workers, contrary to the suggestion in the *Martino* decision that the

propriety of a social worker's conduct would be difficult to ascertain. (*Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 597, 445 N.E.2d 6.) While it may be true that certain fields of social work (*i.e.*, community organization for social welfare, social work research, social welfare administration) may not readily lend themselves to a malpractice action, we believe that marriage and family counseling is one area of social work likely to possess more well-defined principles of social work practice because of its close association with the field of psychology. We are also of the opinion that an adoption by this court of the reasoning set forth in *Martino* would serve only to shield mental health professionals from any consequences of their actions to the detriment of those individuals who turn to them in reliance upon their professional expertise and in a good-faith attempt to improve their marital and family relations. We believe such a result runs contrary to the public policy of this State as gleaned from the statutes heretofore discussed. We also note that the plaintiff in *Martino* apparently did not allege the mishandling of any psychological principles, and to that extent the *Martino* decision is distinguishable from the instant case.

Finally, the defendant has filed a motion to strike those portions of plaintiff's brief dealing with the teachings of Sigmund Freud and the code of ethics apparently adopted by the National Association of Social Workers. The basis for the motion is that these authorities were not introduced at the proceedings below. We deny the motion, since these principles and standards are found in numerous legal authorities dealing with the issue at bar, and because our decision in this case is based primarily upon a finding of a duty owed by defendant and not upon the authorities cited in plaintiff's brief.

Accordingly, the order of the circuit court of Kane County is reversed and remanded for further proceedings. Defendant's motion to strike certain portions of plaintiff's brief is denied.

Reversed and remanded.

NASH, P.J., and STROUSE, J., concur.