378 S.E.2d 105

Nancy **WEAVER**

v.

**UNION CARBIDE CORPORATION**
and Suzanne Hallenberg.

**No. CC981.**

Supreme Court of Appeals of
West Virginia.

Feb. 17, 1989.

Rudolph L. DiTrapano, Joshua I. Barrett, Ditrapano & Jackson, Charleston, for appellant.

David D. Johnson, Cheryl Harris Wolfe, Jackson & Kelly, Chester Lovett, Henry R. Glass, III, Lovett, Vaughan & Cooper, Charleston, for appellees.

MILLER, Justice:

This certified case from the United States Fourth Circuit Court of Appeals [1] presents the question: May a wife maintain suit, based on a claim of malpractice or intentional interference with the marital relationship, against a marriage counselor who in the treatment of her husband engages in sexual relations that lead to the dissolution of the marriage? We conclude that such a suit is, in its essence, one for alienation of affections and is barred by W.Va.Code, 56–3–2a.

The facts of the case are summarized from the complaint. Nancy Weaver, the plaintiff, was at all relevant times married to Robert Greeson, an executive employee of Union Carbide Corporation (Carbide) in Charleston. Suzanne Hallenberg was also employed by Carbide as a counselor and employment relations specialist. Mr. Greeson was counseled by Ms. Hallenberg prior to and after his marriage.

The plaintiff asserts that Ms. Hallenberg abused her relationship as a counselor "by seeking [Mr. Greeson's] attention and affection, pursuing him, and, ultimately, engaging in intimate relations with him." It is further claimed that she informed Mr. Greeson that his wife was in need of psychiatric help and otherwise fostered marital discord. Mr. Greeson ultimately requested that his wife file for a divorce, and soon after cohabited with and married Ms. Hallenberg.

This suit was filed against Carbide and Ms. Hallenberg on October 11, 1985, in Kanawha County Circuit Court. The complaint averred the facts as set out above and pleaded two alternative theories of recovery: malpractice and intentional interference with the marital relationship. The ad damnum requested $2.5 million in damages for the dissolution of the marriage, annoyance and inconvenience, and mental distress.

On petition by Carbide, the case was timely removed to federal district court. Carbide and Ms. Hallenberg then filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. By memorandum opinion and order of June 10, 1986, the suit was dismissed. The district court concluded that since the plaintiff was not a patient of Ms. Hallenberg, her suit was within the bar of W.Va.Code, 56–3–2a, which abolishes all suits for alienation of affections. The Fourth Circuit deemed the question presented to be one of first impression in West Virginia, and certified it to us.[2]

■ We begin with the generally recognized proposition that sexual intimacy with a patient, induced by a marriage or other counselor, is a form of malpractice permitting recovery of damages for emotional distress and other harm resulting from the malpractice.[3] The basis of the malpractice

---

**1.** The certification is made pursuant to W.Va. Code, 51–1A–1, *et seq.*, relating to certification of questions of law from the federal courts or appellate courts in other states to this Court.

**2.** The text of the relevant certified question reads:

"Assuming as true the allegations as set forth in Weaver's complaint, does Weaver's complaint state a cause of action against the defendants?"

The certification also includes a supplemental question which deals with the statute of limitations to be applied. We need not, in view of our disposition of the case, reach the supplemental question.

**3.** *E.g., Andrews v. United States,* 732 F.2d 366 (4th Cir.1984) (physician's assistant having taken counseling and psychology courses); *Simmons v. United States,* 805 F.2d 1363 (9th Cir. 1986) (health service counselor); *Richard H. v. Larry D.,* 198 Cal.App.3d 591, 243 Cal.Rptr. 807 (1988) (psychiatrist); *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988) (priest); *Horak v. Biris, supra* (social worker); *Rowe v. Bennett,* 514 A.2d 802 (Me.1986) (social worker); *Cotton v. Kambly,* 101 Mich.App. 537, 300 N.W.2d 627 (1980) (psychiatrist); *Roy v. Hartogs,* 85 Misc.2d 891, 381 N.Y.S.2d 587 (1976) (psychiatrist); *Mazza v. Huffaker,* 61 N.C.App. 170, 300 S.E.2d 833, *appeal denied,* 309 N.C. 192, 305 S.E.2d 734

is the trust relationship that arises from such counseling services, which are designed to improve the mental and emotional well-being of the patient. In such a situation, it is recognized that the patient may become emotionally dependent on the counselor and be easily manipulated by an unscrupulous counselor.

Some courts make reference to what is termed the "transference phenomenon," which causes the patient to transfer or direct toward the counselor feelings and emotions that are held for another person. The counselor must make proper responses to the transfer in order to avoid emotional involvement with the patient. *E.g., Aetna Life & Casualty Co. v. McCabe*, 556 F.Supp. 1342 (E.D.Pa.1983); *Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985); *see generally* Stedman's Medical Dictionary 1473 (5th ed. 1982).

Woven through most of the cases is the basic thread that a counselor is required to exercise the same degree of skill and knowledge as others in the same field. *E.g., Andrews v. United States*, 732 F.2d 366 (4th Cir.1984); *Richard H. v. Larry D.*, 198 Cal.App.3d 591, 243 Cal.Rptr. 807 (1988); *Horak v. Biris, supra; Rowe v. Bennett*, 514 A.2d 802 (Me.1986); *Roy v. Hartogs*, 85 Misc.2d 891, 381 N.Y.S.2d 587 (1976). The California Court of Appeals in *Richard H.*, 198 Cal.App.3d at 595, 243 Cal.Rptr. at 809, made this statement:

> "It is his further duty to use the care and skill ordinarily exercised in like cases by reputable members of his profession ..., and to use reasonable diligence and his best judgment in the exercise of his skill and the application of his learning, in an effort to accomplish the purpose for which he is employed.... Breach of that duty gives rise to an action for professional negligence." (Internal quotes and citations omitted).[4]

■ Where the case involves one who counsels with both husband and wife, and becomes sexually intimate with one of the spouses, the counselor may be liable to both. The spouse who was not subject to sexual intimacy may recover for loss of consortium. This is because such spouse had a professional counseling relationship and could reasonably expect that the counselor would not act to breach the trust of that relationship. *E.g., Andrews v. United States, supra; Richard H. v. Larry D., supra; Destefano v. Grabrian*, 763 P.2d 275 (Colo.1988); *Horak v. Biris, supra; Lund v. Caple*, 100 Wash.2d 739, 675 P.2d 226 (1984) (en banc). The Court of Appeals in *Horak*, 130 Ill.App.3d at 146-47, 85 Ill. Dec. at 604, 474 N.E.2d at 18, spoke to this issue:

> "Here, both the plaintiff and his wife were patients of the defendant, apparently for the common purpose of rehabilitating their marital relationship. Thus, the treatment of each of the spouses would reasonably have an effect upon the other spouse and the prospects of improving the couple's marriage. To this extent, any malpractice committed by the defendant in the treatment of plaintiff's wife would clearly have an impact upon the plaintiff as well."

The plaintiff places considerable reliance on *Horak*, but it is distinguishable. There, the husband and wife were jointly counseled, and both enjoyed a professional relationship with the counselor. The counselor's malpractice consisted of the violation of his professional trust as to both parties. It is undisputed in the instant case that only Mr. Greeson was counseled. Here, the plaintiff's claim does not rest on any professional relationship that she had with the counselor and the malpractice theory is thus unavailable. Furthermore, as discussed below, her claim for intentional interference with the marital relationship be-

---

(1983) (psychiatrist); *Lenhard v. Butler*, 745 S.W.2d 101 (Tex.App.1988) (psychologist).

**4.** This rule is generally stated in Section 299A of the Restatement (Second) of Torts: "Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

comes substantially similar to one for alienation of affections.

This cause of action, as developed at common law, has as its wellspring the loss of consortium[5] between husband and wife. We summarized the elements of the tort in *Kuhn v. Cooper*, 141 W.Va. 33, 39, 87 S.E.2d 531, 534 (1955): "A cause of action for alienation of affections consists of three elements: wrongful conduct of defendant, plaintiff's loss of affection or consortium with the other spouse, and causal connection between such conduct and loss." (Citations and interior quotes omitted). *See also* Restatement (Second) of Torts § 683 (1977); 41 Am.Jur.2d *Husband and Wife* § 466 (1968).

W.Va.Code, 56–3–2a, abolished all suits for alienation of affections: "Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained in this State for breach of promise to marry or for alienation of affections, unless such civil action was instituted prior to the effective date of this section."[6]

A majority of jurisdictions, like West Virginia, have abolished the tort of alienation of affections either by statute or judicial decision. This movement toward abolition is defended for a variety of reasons. Possibly the most widely cited reason is the potential for blackmail and extortion between spouses. Another is that the court system is ill-equipped to fairly and objectively assess the loss. Finally, alienation of affections is frequently attacked for the reason that it resembles a "forced sale" of one spouse's affections. 1 H. Clark, The Law of Domestic Relations in the United States 659–61 (1987); *see also* Prosser & Keeton on Torts 929–31 (5th ed. 1984). These reasons reflect the consensus that marital harmony is best served by judicial noninvolvement.

■ Every jurisdiction that has confronted the issue has decided that a suit by a nonpatient spouse against a marriage counselor is substantially the same as one for alienation of affections and is, therefore, barred. This is because the nonpatient plaintiff lacks any professional relationship with the counselor and essentially sues for the alienation of his spouse's affections. *Harrington v. Pages*, 440 So.2d 521 (Fla. App.1983); *Gasper v. Lighthouse*, 73 Md. App. 367, 533 A.2d 1358 (1987), *cert. denied*, 311 Md. 718, 537 A.2d 272 (1988); *Spiess v. Johnson*, 89 Or.App. 289, 748 P.2d 1020, *aff'd mem.*, 307 Or. 242, 765 P.2d 811 (1988);[7] *Lund v. Caple, supra.*

---

5. In *Shreve v. Faris*, 144 W.Va. 819, 824, 111 S.E.2d 169, 173 (1959), we defined consortium as follows:

> "Consortium is a right which the law recognizes in a husband, arising from the marital union, to have performance by the wife of all those duties and obligations in respect of him which she undertook when she entered into the marriage relation, including the right to the conjugal fellowship of the wife, her company, cooperation and aid in every conjugal relation, fellowship and assistance of the wife, and comfort in her society as to which the right of the husband is peculiar and exclusive; and loss of consortium is the loss of any and all such rights."

*Shreve* represents the most common case for loss of consortium, i.e., where one spouse is injured in an accident and the other spouse sues for loss of consortium. A wife may also sue for loss of consortium with her husband. W.Va. Code, 48–3–19a; *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976).

6. The effective date of this statute was March 6, 1969. *See* 1969 W.Va. Acts ch. 101. In *Wallace v. Wallace*, 155 W.Va. 569, 184 S.E.2d 327 (1971), we found W.Va.Code, 56–3–2a, to be constitutional.

7. The Oregon Court of Appeals in *Spiess*, considering only the legal theories in the plaintiff's complaint, indicated that the plaintiff might have a cause of action against the counselor for breach of contract. This was based upon his allegations that he had contracted with the counselor to provide treatment for his wife. The court also found that he might have a claim for intentional infliction of severe emotional distress which appears to be the same as the tort of outrage. Restatement (Second) of Torts § 46. *See Harless v. First Nat'l Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982).

We question the validity of this theory. As the Washington Supreme Court pointed out in *Lund v. Caple, supra*, under Section 46 of the Restatement where the conduct is directed at a third person (the patient spouse), the plaintiff cannot recover unless "a member of such person's immediate family ... *is present at the time.*" Ordinarily, the plaintiff spouse is not present when the outrageous conduct is perpetrated on the patient spouse by the counselor.

Typical of these cases is *Lund*, where a minister counseled and became romantically involved with a female parishioner. A suit for loss of consortium was timely filed by the husband. The minister claimed that the essence of the complaint was the impairment of the marriage relationship and that the claim was, therefore, subject to the bar against suits for alienation of affections. In its discussion, *Lund* recited the policies that underlay the abolition of the tort and concluded that these policies were equally applicable to suits against a marriage counselor:

"Here [the plaintiff] is suing because of alleged sexual misconduct that interfered with his marriage. His wife did not join the lawsuit, which alone would not bar the action, but does indicate at least the possibility of a vengeful motive or a so-called 'forced sale' on the part of a wronged husband. As such, this lawsuit is so similar to an alienation of affections action that as a matter of policy it falls within the prohibitions of [a prior case that abolished suits for alienation of affections]." 100 Wash.2d at 747, 675 P.2d at 231.

We agree with the rationale of *Lund* and the other related cases. We must look to the substance of the plaintiff's complaint and not merely to its form. It is clear that the plaintiff seeks only damages that relate to the impairment of her marriage and to her eventual divorce. She did not have a professional relationship with the counselor on which to predicate a malpractice claim.

To allow her suit would also run counter to the policies underlying the legislative abolition of suits for alienation of affections.

We, therefore, conclude that a suit against a marriage counselor, based on malpractice or intentional interference with the marital relationship, by an uncounseled spouse seeking damages arising from the counselor's sexual involvement with the other spouse may not be maintained. The lack of any professional relationship between the counselor and the uncounseled spouse forecloses the malpractice claim. The claim for intentional interference with the marital relationship is, in its essence, one for alienation of affections and is barred by W.Va.Code, 56–3–2a.

The questions certified to this Court are, therefore, answered and dismissed from the docket.

Certified Questions Answered and Dismissed.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.