404 S.E.2d 425

Emogene SISSON, Plaintiff
Below, Appellant,

v.

SENECA MENTAL HEALTH/MENTAL
RETARDATION COUNCIL, INC., a
Corporation; and Max Malcomb, Indi-
vidually and as Servant, Agent and Em-
ployee of Seneca Mental Health/Mental
Retardation Council, Inc., Defendants
Below, Appellees.

No. 19667.

Supreme Court of Appeals of
West Virginia.

Submitted March 5, 1991.
Decided April 17, 1991.

(Seneca). The issue on appeal is whether Max Malcomb, an employee of Seneca, had a patient-counselor relationship with Ms. Sisson when he engaged in sexual relations with her. We find that this professional relationship did not exist; therefore, we affirm the judgment of the circuit court.

## I.

During August and September, 1983, Ms. Sisson was hospitalized at St. Joseph's Hospital in Buckhannon, West Virginia for severe depression. After being released from St. Joseph's, Ms. Sisson was referred by her treating physicians to Seneca for out-patient mental health counseling and treatment. Thereafter, Ms. Sisson saw Dale Cottle, a mental health counselor at Seneca, two to three times a week.

In April, 1984, Mr. Cottle informed Ms. Sisson that he was going on vacation, and that if she needed to talk to a counselor while he was gone, she should call the emergency room at Summersville Memorial Hospital (the Hospital). In turn, the Hospital would direct the counselor on-call at Seneca to contact her. On April 21, 1984, while Mr. Cottle was on vacation, Ms. Sisson called the Hospital to request the assistance of a counselor. Ms. Sisson was involved in a pending divorce action, and she called the Hospital because her son had just informed her that he wanted to live with his father after the divorce was final.

Max Malcomb was on-call that night for Seneca. Mr. Malcomb had been hired on February 16, 1983, as a Substance Abuse Worker II. His responsibilities included providing out-patient services and case management for chronic alcoholics. Moreover, Mr. Malcomb, like all counselors at Seneca, was required to be on-call one week every two months in order to handle emergency situations that arise after business hours.

Mr. Malcomb asked Ms. Sisson to come down to the hospital and talk. After she arrived, Mr. Malcomb and Ms. Sisson discussed her problems for about one hour. During this conversation, Ms. Sisson learned that Mr. Malcomb was related to

Kenneth J. Barnett, Donald K. Bischoff, Summersville, for appellant.

Stephen R. Crislip, Gale R. Lea, Jackson & Kelly, Charleston, for appellee Seneca Mental Health/Mental Retardation Council, Inc.

Timothy R. Ruckman, Callaghan & Ruckman, Summersville, for appellee Max Malcomb.

MILLER, Chief Justice.

Emogene Sisson, the plaintiff below, appeals an order of the Circuit Court of Nicholas County, dated August 31, 1989, granting summary judgment for Seneca Mental Health/Mental Retardation Council, Inc.

David Malcomb, a man she had traveled with to Michigan twenty years earlier. After making this connection, Mr. Malcomb asked Ms. Sisson to join him for a cup of coffee. The two of them left the premises, bought some coffee, and drank it while sitting in Ms. Sisson's car. Ms. Sisson alleges that Mr. Malcomb kissed her on the cheek at the end of the evening.

Shortly after this incident, Dale Cottle returned from vacation, and Ms. Sisson resumed her counseling sessions with him. She apparently never mentioned to Mr. Cottle her encounter with Mr. Malcomb.

Subsequent to their initial meeting, Mr. Malcomb and Ms. Sisson began meeting regularly at various locations. A typical evening consisted of driving around in Mr. Malcomb's truck, drinking alcoholic beverages, and engaging in sexual intercourse. These encounters continued until June, 1984, when Ms. Sisson's brother learned about her relationship with Mr. Malcomb and forced her to go to Seneca and complain. Seneca investigated the allegations immediately and fired Mr. Malcomb that very day. Nonetheless, the pair's relationship continued until March, 1985, when Ms. Sisson decided to end it.

On June 14, 1985, Ms. Sisson filed suit against Seneca and Mr. Malcomb, both individually and as an agent of Seneca. The complaint alleged two causes of action: (1) malpractice and (2) negligent hiring and supervision. On August 31, 1989, the circuit court granted summary judgment for Seneca on the grounds that Mr. Malcomb was acting outside of the scope of his employment and that there was no evidence presented that Seneca had been negligent in either hiring or supervising Mr. Malcomb.

## II.

Initially, Seneca points out that the order dismissing it from the case did not expressly state that there was no just reason for delay and did not direct entry of a final order,[1] as required by Rule 54(b) of the West Virginia Rules of Civil Procedure.[2] Consequently, Seneca argues that the order is not a final or appealable order and that these proceedings should be dismissed.

We recently rejected this argument in *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991). In *Durm*, the plaintiff had fallen on a sidewalk outside of a Foodland store that was located in a shopping center owned by Heck's. The plaintiff sued both Foodland and Heck's. Foodland filed a motion for summary judgment on the ground that under the terms of their lease, Heck's had a mandatory obligation to maintain and repair the common areas. The circuit court granted summary judgment against the plaintiff.

On appeal, Heck's argued that because the circuit court's order did not state "that there was no just reason for delay" and failed to order entry of a judgment, the order was interlocutory. We disagreed and pointed out that we have not construed Rule 54(b) as strictly as have the federal courts. We explained the difference in our application of Rule 54(b) in *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 469, 256 S.E.2d 758, 761 (1979):

"The right of appeal to a federal circuit court is absolute; under our system, it is not. The consequence of this difference is that we can be less restrictive in interpreting the finality of an order, since upon preliminary review of the ap-

1. In *Taylor v. Miller*, 162 W.Va. 265, 269, 249 S.E.2d 191, 194 (1978), *quoting Lloyd v. Kyle*, 26 W.Va. 534, 540 (1885), we discussed the concept of a final order independently of the Rules of Civil Procedure and concluded: "To be appealable, therefore, an order must be a final order or an interlocutory order 'approximat[ing]' a final order in its 'nature and effect.'"

2. Rule 54(b) provides, in relevant part:
"*Judgment upon multiple claims or involving multiple parties.*— ... [W]hen multiple parties are involved, *the court may direct the entry of a final judgment as to one or more but fewer than all of the ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates ... fewer than all the parties shall not terminate the action as to any of the ... parties[.]" (Emphasis added).

plication for appeal we may reject it as being without merit."

■ When a party is dismissed from a case by way of a summary judgment, there is a certain finality to that party's liability in the case. Accordingly, we held in Syllabus Point 2 of *Durm:*

"Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that 'no just reason for delay' exists and 'directi[ng] ... entry of judgment' will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect."

We also explained in *Durm* that an order is final "if the order resolves the litigation as to a claim or a party." 184 W.Va. at 566, 401 S.E.2d at 912. (Citations omitted).

An examination of the circuit court's August 31, 1989 order reveals that it fully absolved Seneca of any liability. Indeed, the order stated "the complaint of plaintiff against defendant Seneca Mental Health/Mental Retardation Council, Inc., ... [is] hereby, dismissed." In light of the foregoing, we find that the August 31, 1989 order is final and is subject to appeal.

### III.

■ The plaintiff argues that summary judgment was improper. Our traditional standard for granting summary judgment is set out in Syllabus Point 3 of *Aetna Surety & Casualty Co. v. Federal Insur-*

*ance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963):

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

The facts recited in Part I, *supra,* are substantially uncontroverted. The crucial issue is whether they establish a cause of action for malpractice.

Our leading case recognizing a cause of action for malpractice where a counselor engages in sexual relations with a patient is *Weaver v. Union Carbide Corp.,* 180 W.Va. 556, 378 S.E.2d 105 (1989). In *Weaver,* an employee went to a marriage counselor at his place of employment. During the course of his therapy, the employee and the counselor entered into a sexual relationship. The employee eventually left his wife and moved in with the counselor. The wife filed suit in the Circuit Court of Kanawha County against the employer for malpractice and intentional interference with the marriage relationship. The case was eventually removed to the United States District Court for the Southern District of West Virginia. The district court concluded that because the wife was not a patient of the therapist, the action was barred by W.Va. Code, 56–3–2a.[3] The Court of Appeals for the Fourth Circuit determined that the issue was one of first impression in our state and certified a question[4] to this Court.[5]

■ We held in Syllabus Point 3 of *Weaver* that the wife could maintain neither cause of action.[6] However, we ac-

**3.** W.Va. Code, 56–3–2a, provides: "Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained in this State for breach of promise to marry or for alienation of affections, unless such civil action was instituted prior to the effective date of this section."

**4.** The certification was made pursuant to W.Va. Code, 51–1A–1, *et seq.*

**5.** The question certified was: "May a wife maintain suit, based on a claim of malpractice or intentional interference with the marriage relationship, against a marriage counselor who in

the treatment of her husband engages in sexual relations that lead to the dissolution of the marriage." 180 W.Va. at 557, 378 S.E.2d at 106.

**6.** Syllabus Point 3 of *Weaver* provides:

"A suit against a marriage counselor, based on a claim of malpractice or intentional interference with the marital relationship, by an uncounseled spouse seeking damages arising from the counselor's sexual involvement with the other spouse may not be maintained. The lack of any professional relationship between the counselor and the uncounseled spouse forecloses the malpractice claim. The claim

knowledged the potential validity of a malpractice action where a counselor engages in sexual intimacy with a patient during therapy. *See also Simmons v. United States*, 805 F.2d 1363 (9th Cir.1986); *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278 (1989); *Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985); *Rowe v. Bennett*, 514 A.2d 802 (Me.1986); *Noto v. St. Vincent's Hosp. & Medical Center of N.Y.*, 142 Misc.2d 292, 537 N.Y.S.2d 446 (1988), *aff'd*, 160 A.D.2d 656, 559 N.Y.S.2d 510, *aff'd*, 76 N.Y.2d 714, 564 N.Y.S.2d 718, 565 N.E.2d 1269 (1990); *Mazza v. Huffaker*, 61 N.C. App. 170, 300 S.E.2d 833, *review denied*, 309 N.C. 192, 305 S.E.2d 734 (1983). In Syllabus Point 1, in part, of *Weaver*, we explained that before such a cause of action exists, there must be evidence presented of a trust relationship:

> "The basis of the malpractice is the trust relationship that arises from such counseling services which are designed to improve the mental and emotional well being of the patient. In such a situation, it is recognized that the patient may become emotionally dependent on the counselor and be easily manipulated by an unscrupulous counselor."

Other jurisdictions have reached the same conclusion in the professional counseling area. *See also Vigilant Ins. Co. v. Employers Ins. of Wausau*, 626 F.Supp. 262 (S.D.N.Y.1986); *St. Paul Fire & Marine Ins. Co. v. Mitchell*, 164 Ga.App. 215, 296 S.E.2d 126 (1982); *Horak v. Biris, supra; Figueiredo–Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (1991); *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo.1968); *Orozco v. Sobol*, 162 A.D.2d 834, 557 N.Y.S.2d 738 (1990); *L.L. v. Medical Protective Co.*, 122 Wis.2d 455, 362 N.W.2d 174 (1984), *review denied*, 122 Wis.2d 783, 367 N.W.2d 223 (1985). As

the court explained in *Simmons*, 805 F.2d at 1364, *quoting Stedman's Medical Dictionary* 1473 (5th Lawyers' Ed.1982), the trust relationship develops because of the emotional bond that forms between a therapist and his patient, known as the transference phenomenon:

> "Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is 'generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past.' "

In a related vein, courts have recognized that in medical malpractice cases where the patient sustains a physical injury, it must be initially shown that a physician-patient relationship existed before the doctor can be found liable. *See, e.g., Doherty v. Hellman*, 406 Mass. 330, 547 N.E.2d 931 (1989); *Willoughby v. Wilkins*, 65 N.C.App. 626, 310 S.E.2d 90 (1983), *review denied*, 310 N.C. 631, 315 S.E.2d 697 (1984).

■ Whether a trust relationship exists in therapist counseling depends on two primary factors, together with any other relevant circumstances.[7] First, the therapy must have been conducted over a sufficient period of time to establish a trust relationship. Second, there must be some reasonable semblance of actual therapy sessions. Otherwise, any casual encounter with a therapist that leads to a consensual sexual relationship would give rise to a malpractice claim.

■ Applying these standards to the present case, we conclude as a matter of law that there was no trust relationship engendered by therapeutic counseling in this case. Ms. Sisson met Mr. Malcomb only once in his professional capacity at the hospital. After this meeting, Ms. Sisson

---

for intentional interference with the marital relationship is, in its essence, one for alienation of affections and is barred by W.Va. Code, 56–3–2a."

7. Courts have recognized that even though the sexual relationship begins after the therapy relationship is ended, it can still be actionable if it arises out of the trust relationship. *See Noto v. St. Vincent's Hosp. & Medical Center of N.Y.,*

*supra. Cf. Orozco v. Sobol, supra.* Moreover, where the sexual victim is a minor, there may be no necessity to demonstrate a trust relationship as the incident is not consensual. *See Doe v. United States*, 618 F.Supp. 71 (D.C.Cir.1985). *Cf. Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278 (1989) (In Bank).

resumed her therapy with Mr. Cottle. Her subsequent associations with Mr. Malcomb were entirely outside any reasonable semblance of actual therapy sessions. Consequently, we find that the sexual relationship did not develop because of a trust relationship established during counseling. Because there was not a trust relationship between Mr. Malcomb and Ms. Sisson, we need not address the question of the hospital's liability under the doctrine of *respondeat superior* nor the issue of whether it was negligent in hiring or supervising Mr. Malcomb.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Nicholas County granting summary judgment for Seneca.[8]

Affirmed.

8. Pursuant to Rule 10(f) of the West Virginia Rules of Appellate Procedure, Mr. Malcomb cross-assigns as error the circuit court's denial of his motion for summary judgment. We decline to address Mr. Malcomb's cross-assignment of error because "[a]n order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable." Syllabus Point 8, *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of N.Y., supra.* *See generally* C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure: Civil 2d* § 2715 (1983 & Supp.1990). In light of our disposition of this case, Mr. Malcomb may wish to renew his motion for summary judgment in the circuit court.