No. 14-0280 – *State of W.Va. ex rel. Justin S. Golden, Sr. et al. v. The Honorable Tod J. Kaufman & Mark A. Miller*

**FILED**

**June 16, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, dissenting:

In its rush to modernize the jurisprudence of our state, the majority has violated long standing procedural and substantive precepts. Since the formation of this state, judge-made law has never been used to *eliminate* a cause of action existing at common law. This is because our constitution is clear that it is the Legislature's prerogative to enact laws for the purpose of repealing common law which existed when this state was formed and *not* the duty of this branch of government.[1] Until today, I submit that this distinction was repeatedly and regularly observed by this Court. I write separately to express my displeasure with the majority's foray into waters clearly reserved for legislative action. Upon analysis, the majority opinion is undisputedly a case of blatant judicial activism.

### A. Procedural Irregularities

As an initial matter, I must voice concern that the majority disregarded well-

---

[1]*See* W.Va. Const. art. VIII, § 13 ("Except as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue [to be] the law of this State *until altered or repealed by the legislature*.") (emphasis supplied); *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 694, 408 S.E.2d 634, 644 (1991) (recognizing general authority of Legislature to alter or repeal common law under W.Va. Const. art. VIII, § 13).

1

established tenets regarding the grounds for issuing a writ of prohibition. While the majority recognizes the axiomatic standard this Court routinely applies in such cases, the basis for the writ's issuance in this case is never identified. *See* Syl. Pt. 4, *Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Presumably, the majority sought to rely on the third *Hoover* factor–clear legal error. Yet, no such finding is set forth within the opinion. And, assuming that clear legal error is the ground upon which the majority relies to exercise this Court's original jurisdiction,[2] this ground is highly suspect and procedurally improper. In its ruling denying the petitioner's motion for summary judgment, the trial court cited the existence of genuine issues of fact regarding multiple causes of action asserted by the plaintiff, including one for criminal conversation–a cause of action that, until today, continued to exist. The trial court's proper recognition of existing law does not constitute "clear legal error" for purposes of issuing a writ of prohibition. By its use of prohibition to alter long-established common law, rather than as a means to enforce and uphold existing law, the majority acted in a manner that was highly irregular and clearly unwarranted.[3]

## B. Substantive Infirmities

After waxing eloquent about the archaic underpinnings of the tort of criminal

---

[2]*See* W.Va. Cont. art. VIII, § 3.

[3]This matter could have been properly addressed on appeal.

2

conversation,[4] the majority *sua sponte* reads language into West Virginia Code § 56-3-2a (2012) that unquestionably was not included by this state's lawmakers. With the enactment of this statute in 1969, the Legislature abolished civil actions for "breach of promise to marry or for alienation of affections." Unlike a legion of other states, including our sister state of Virginia just one year earlier, our lawmakers chose *not* to include an action for criminal conversation as one of the actions expressly abolished through this legislation. *See* Ala. Code § 6-5-331 ("There shall be no civil claims for alienation of affections, *criminal conversation*, or seduction of any female person of the age of l9 years or over."); Cal. Civ. Code § 43.5 ("No cause of action arises for: (a) Alienation of affection. (b) *Criminal conversation.* (c) Seduction of a person over the age or legal consent. (d) Breach of promise of marriage."); Col. Rev. Stat. § 13-20-202 ("All civil causes of action for breach of promise to marry, alienation of affections, *criminal conversation*, and seduction are hereby abolished."); Conn. Gen. Stat. Ann. § 52-572(f) ("No action may be brought upon any cause of action arising from *criminal conversation*"); Del. Code § 10-39-3924 ("The rights of action to recover sums of money as damages for alienation of affections, *criminal conversation*, seduction, enticement, or breach of contract to marry are abolished."); D.C.

---

[4]While I strongly agree that the notion that a woman belongs to her husband in the property sense has rightly ceased to be a recognized legal tenet, the manner in which to effect the necessary elimination of this cause of action was to amend West Virginia Code § 56-3-2a (2012) to specifically include an action for criminal conversation among the abolished actions. This is the route that most states have followed to eliminate this cause of action.

Code § 16-923 ("Cause of action for breach of promise, alienation of affections, and *criminal conversation* are hereby abolished."); Fla. Stat. § 771.01 ("The rights of action heretofore existing to recover sums of money as damage for the alienation of affections, *criminal conversation*, seduction or breach of contract to marry are hereby abolished."); Ga. Code § 51-1-17 ("Adultery, alienation of affections, or *criminal conversation* with a wife or husband shall not give a right of action to the person's spouse."); Ind. Code § 34-12-2-1(a) ("The following civil causes of action are abolished: (1) Breach of promise to marry. (2) Alienation of affections. (3) *Criminal conversation*. . . ."); Mich. Comp. L. § 600.2901 ("The following causes of action are abolished: (1) alienation of affections . . . (2) *criminal conversation*. . . ."); Minn. Stat. § 553.02 ("All civil causes of action for breach of promise to marry, alienation of affections, *criminal conversation*, and seduction are abolished."); Nev. Rev. Stat. § 41.380 ("All civil causes of action for breach of promise to marry, alienation of affections, and *criminal conversation*, are hereby abolished; but this section does not abolish any cause of action for criminal conversation which accrued before July 1, 1979."); N.J. Stat. § 2A:23-1 ("The rights of action formerly existing to recover sums of money as damage for the alienation of affections, *criminal conversation*, . . . are abolished . . . ."); N.Y. Civ. Rights Law § 80-a ("The rights of action to recover sums of money as damages for alienation of affections, *criminal conversation*, seduction and breach of promise to marry are abolished."); Ohio Rev. Code § 2305.29 ("No person shall be liable in civil damages for any breach of a promise to marry, alienation of affections, or *criminal*

4

*conversation . . . .*"); Or. Rev. Stat. § 31.982 ("There shall be no civil cause of action for *criminal conversation.*"); Vt. Stat. § 15-1001 ("The rights of action to recover sums of money as damages for alienation of affections, *criminal conversation*, seduction, or breach of promise to marry are abolished."); Va. Code § 8.01-220(A) ("Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained in this Commonwealth for alienation of affection, breach of promise to marry, or *criminal conversation* upon which a cause of action arose or occurred on or after June 28, 1968.") (emphasis supplied throughout). As this delineation of statutory repeals illustrates, the states that have statutorily abolished an action for criminal conversation have done so explicitly. In marked contrast, the West Virginia Legislature has chosen not to abolish such a cause of action.

In judicially expanding the scope of West Virginia Code § 56-3-2a, the majority acted contrary to this Court's long-held recognition that

> "[I]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposely omitted.*" Moreover, "[a] statute . . . may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten."

*Longwell v. Board Of Educ.*, 213 W.Va. 486, 491, 583 S.E.2d 109, 114 (2003) (citations omitted and emphasis in original); *see also Seagraves v. Legg*, 147 W.Va. 331, 338, 127

5

S.E.2d 605, 609 (1962) ("It is clear, from the constitutional provisions and the statute pertaining thereto, that the legislature has the power to change the common law, and inasmuch as it has not done so in connection with the question involved in this case, the common law relating thereto remains the law of this State.").

The majority's reliance on *Morningstar v. Black & Decker Manufacturing Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979), as authority for its actions in abolishing a cause of action recognized at the common law is clearly misplaced. Without exception, each time this Court has acted to alter common law it has been either to expand the law to provide for a cause of action, as in the instance of *Morningstar* with the recognition of products liability law, or it has been to address rules applied in connection with judicially-created law. As we explained in *Jefferson County Board of Education v. Education Ass'n*, 183 W.Va. 15, 393 S.E.2d 653 (1990): "Although in the past we have not hesitated to alter common law rules where we believed that the changing conditions of society required such a result, in each case, those changes involved rules that were relatively simple in their impact and fell within an accustomed band of court-created common law, such as the tort law.[5]" *Id.* at 21, 393

---

[5]"E.g., *King v. Kayak Mfg. Co.*, 182 W.Va. 276, 387 S.E.2d 511 (1989) (abolishing common law defense of assumption of risk in favor of comparative assumption of risk); *Gamble v. Main*, 171 W.Va. 469, 300 S.E.2d 110 (1983) (establishing implied warranty of fitness in new home); *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) (abolishing common law contributory negligence in favor of comparative contributory negligence); *Morningstar v. Black & Decker Mfg. Co.*, *supra* (establishing strict liability in tort for manufactured products); *Harless v. First Nat'l Bank in Fairmont*,

S.E.2d at 659 (footnote omitted). By judicially eliminating a cause of action that the Legislature decided to preserve, the majority has deviated sharply from this Court's previous circumscribed exercise of its authority to alter or expand the common law "which [it] . . . created." *Morningstar*, 162 W.Va. at 874, 253 S.E.2d at 676.

What the majority overlooks in its haste to eliminate the criminal conversation cause of action is that this Court has never previously relied upon its authority to mold the common law of this state by usurping the constitutional duty imposed on the Legislature to repeal causes of action existing prior to our statehood. *See* W.Va. Const. art. VIII, § 13. To the contrary, we have previously heeded this constitutional division of authority by recognizing that the right of repeal is expressly reserved to the Legislature. *See, e.g., State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 232 n.14, 488 S.E.2d 901, 912 n.14 (1997) (preserving common law distinction of dividing actions into three classes and establishing limitations of actions based on those distinctions, despite

162 W.Va. 116, 246 S.E.2d 270 (1978) (limiting private employer's right to discharge an at-will employee); *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976) (establishing right of unemancipated minor to maintain action against parents for personal injuries); *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975) (abolishing doctrine of municipal tort immunity)*; State v. Grimm,* 156 W.Va. 615, 195 S.E.2d 637 (1973), *overruled on other grounds*, *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980) (disapproving the M'Naghten rule on insanity and adopting a rule similar to the Model Penal Code); *Adkins v. St. Francis Hosp.*, 149 W.Va. 705, 143 S.E.2d 154 (1965) (abolishing doctrine of charitable immunity in tort cases against hospitals)."

7

abolishment of such distinct actions by most jurisdictions, because *"our legislature has declined to abolish these common law distinctions"*).

As we previously recognized in *Wallace v. Wallace*, 155 W.Va. 569, 184 S.E.2d 327 (1971), the language of West Virginia Code § 56-3-2a is lacking in ambiguity with its clear abolishment of only two causes of action–breach of promise to marry and alienation of affections. 155 W.Va. at 579, 184 S.E.2d at 333 ("[T]he statute abolishes the common law action of breach of promise to marry and the common law action of alienation of affections . . . ."). By conflating a cause of action for criminal conversation with one for alienation of affections, the majority has weakened its analysis. While the transparency of this fabricated convergence is obvious, the majority simply whitewashes away a long-standing distinction between these two causes of action. The elements of the two actions have long been recognized as distinct in that sexual congress is required to prove criminal conversation but not to prove a claim for alienation of affections. *See Kuhn v. Cooper*, 141 W.Va. 33, 42, 87 S.E.2d 531, 536 (1955).

In its attempt to dodge this dilemma of distinct elements for the actions of criminal conversation and alienation of affections, the majority simply decrees that "the two torts are inexorably linked." Because marital infidelity can be involved in both actions, though it is not required in an action for alienation of affections, the majority simply

8

concludes that the previously recognized distinction between the two claims no longer exists. The fact that twenty-eight legislative bodies have perceived a need to separately abolish a cause of action for criminal conversation in the course of adopting legislation aimed at abolishing an action for alienation of affections further dispels the majority's decision to treat the two causes of actions as one. For reasons that are readily visible, the majority has simply employed a shell game in its attempt to hide the cause of action for criminal conversation within the now abolished cause of action for alienation of affections.

The majority's reliance on *Weaver v. Union Carbide,* 180 W.Va. 556, 378 S.E.2d 105 (1989)*,* is decidedly misplaced. While the two cases may be factually apposite in that a third party was sued in connection with a spouse's acts of infidelity, the cases are wholly inapposite from a legal standpoint. There was no cause of action asserted for criminal conversation, adultery, or breach of fiduciary duty in *Weaver.* Whereas this Court was faced with identifying the true nature of the asserted malpractice claim in *Weaver,* the claims in this case were pled with clarity. Unlike *Weaver*, the claims asserted by Mr. Miller involve causes of action distinct and wholly separate from the abolished claim for alienation of affections.

In clear contrast to *Weaver*, Mr. Miller pled viable claims that the majority has chosen to prevent him from pursuing. Not only does the action of criminal conversation

9

continue to exist until the Legislature repeals it,[6] but the adultery claim did not simply disappear with the repeal of our statute. What the majority omitted from its opinion was the existence of evidence in the form of an affidavit from Mrs. Miller stating that the affair between her and Mr. Golden began several months before the repeal of the adultery statute in June 2010.[7] It has long been the law of this state that the repeal of a statute does not affect causes of action that accrued before the repeal. *See* W.Va. Code § 2-2-8 (2013) ("The repeal of a law . . . shall not affect any offense committed . . . before the repeal took effect. . . ."). Consequently, despite the majority's attempt to brush a valid cause of action under the proverbial rug, the cause of action for adultery remained viable despite the majority's fallacious decision to eliminate it.[8]

Not only was the majority's attempt to recast Mr. Miller's claims as nothing but a singular claim for alienation of affections improper and ill-advised, but in so doing, the majority has sought to engage in prohibited legislating from the bench. In disagreeing

---

[6]*See* W.Va. Const. art. VIII, § 13.

[7]West Virginia Code § 61-8-3 providing a cause of action for adultery was repealed effective June 11, 2010. Mrs. Miller averred in her affidavit that the adulterous relationship with Mr. Golden began in April or May of 2010.

[8]Employing the majority's characterization of criminal conversation as the common law tort for adultery, it stands to reason that until the statutory offense of adultery was repealed in June 2010, an action for criminal conversation remained viable in this state. *Cf. Fadgen v. Lenker*, 365 A.2d 147, 154 (Pa. 1976) (Roberts, J., dissenting) (commenting that repeal of criminal offense of adultery did not require conclusion that correlative tort of adultery was abolished without express legislative action).

10

with the Pennsylvania Supreme Court's decision to judicially abolish the cause of action for

criminal conversation, Justice Roberts aptly opined:

> Society may not have a sufficient interest in prosecuting this activity but individuals may indeed still have an interest worthy of vindication in a civil action. It may well be that the [omission of adultery] in the new Crimes Code creates even greater justification for the tort of criminal conversation, since a wronged spouse now has only a civil remedy and can no longer be vindicated through society's exercise of the criminal sanction.
> . . . .
> The true inquiry here should be: (1) Is there an interest which society should protect? (2) Has there been an invasion of that interest which cannot be excused or justified? (3) Has the invasion produced an injury for which the law can provide a remedy?
> The first inquiry has been answered in the affirmative for more than two hundred years. *Whether the interest is no longer worthy of protection is a public policy decision only the Legislature should make. . . .*

*Fadgen v. Lenkner*, 365 A.2d 147, 154-55 (Pa. 1976) (Roberts, J., dissenting) (emphasis

supplied).


Echoing the concerns eloquently articulated by Justice Roberts, I observe that

just because society may be inured to the occurrence of adulterous conduct does not mean

that the court system should consequently view the marital contract and its attendant

obligations as undeserving of legal protection. That determination is one better left for the

Legislature. Accordingly, I respectfully dissent.

11