MT. ZION STATE BANK AND TRUST, as Guardian of the Estates of Joe Brion *et al.*, Minors, Plaintiff-Appellee and Cross-Appellant, v. THE CENTRAL ILLINOIS ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH (United Methodist Church for the Illinois Area), Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—89—0890

Opinion filed June 28, 1990.—Rehearing denied July 30, 1990.

George B. Gillespie and William P. Hardy, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellant.

Thomas F. Londrigan and Gary L. Cline, both of Londrigan, Potter & Randle, P.C., of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On March 19, 1984, Judy and Lee Brion, as parents of Joel Brion, Jeremy Brion, and Michael Butler Brion, minors, brought suit in the circuit court of Sangamon County against defendants the Central Illinois Annual Conference of the United Methodist Church (Conference), the United Methodist Church of Macon (Church), William Wayne Fyffe, Charles Smith, and others who were later dismissed from the case. After a second-amended complaint was filed, the circuit court entered an order on August 26, 1987, granting summary judgment to the Church and Smith. Subsequently, plaintiffs "dismissed" their cause as to those defendants. On August 1, 1989, the circuit court granted summary judgment to defendant, the Conference, as to two counts charging the Conference with liability on a *respondeat superior* theory.

On August 10, 1989, the circuit court permitted the Mt. Zion State Bank and Trust, as guardian of the minors, to be substituted for the minors' parents, as plaintiff. During the course of a jury trial, plaintiff settled with Fyffe. The circuit court entered judgment on jury verdicts in favor of plaintiff and against the Conference awarding damages in the sum of $150,000 as to each of plaintiff's three minor wards, thus making the total sum of the judgment $450,000.

The Conference has appealed, contending (1) the jury verdict against it was inconsistent with answers given by the jury to an interrogatory, and (2) reversible error resulted from (a) Fyffe's testimony that his attorney was provided by the Conference's insurer, (b) introduction into evidence of the loan agreement which constituted the settlement between the plaintiff and Fyffe, and (c) the court's instructing the jury in regard to the loan agreement. Plaintiff has cross-appealed the summary judgment in favor of the Conference as to two counts. It maintains summary judgment should not have been entered, because the evidence before the court at the time of the hearing on the motion for summary judgment showed the existence of a factual dispute as to whether judgment should be issued on those two counts.

The thrust of plaintiff's case was that Fyffe was a Methodist pastor at the Church, which was a part of the Conference, and, while serving in that capacity in 1982, he had homosexually molested the minor boys, who are plaintiff's wards, thereby causing them serious emotional damage. The second-amended complaint alleged that the Conference negligently assigned Fyffe to be pastor at the Church, knowing of a prior act of homosexual assault which he had made, but not informing the Church of this fact. Plaintiff also alleged the Church and Smith, president of the board of trustees of the Church, were liable for Fyffe's acts under the doctrine of *respondeat superior*. Plaintiff relies on the *respondeat superior* doctrine in contending the summary judgment in favor of the Conference on that issue was entered in error.

The substance of the evidence of negligence by the Conference presented at trial showed that in 1975, while a probationary pastor, Fyffe had attempted to fondle a 10-year-old boy he was caring for. This information was given to the Methodist bishop and district superintendent who were assured by Fyffe and his wife the fondling was an isolated incident. The evidence at trial indicated that although the bishop and other church officials were not aware of it, Fyffe had been continually molesting his stepson from 1972 through 1978.

Prior to retiring, the jury was submitted three interrogatories by the court at the request of the Conference. The interrogatories and the answers given by the jury were as follows:

"Interrogatory No. 1: Was the defendant church guilty of any negligence in retaining its employee Fyffe? Answer: Yes.

Interrogatory No. 2: Should the defendant church have reasonably foreseen a sexual assault on a minor child by Wayne Fyffe? Answer: Yes.

Interrogatory No. 3: Was the sole proximate cause of the in-

juries to the plaintiff's minor sons [*sic*] the assault on them by Wayne Fyffe? Answer: Yes."

The words "defendant church" obviously referred to the Conference, which was the only remaining defendant when the case was submitted to the jury. The reference to the "plaintiff's minor sons" overlooked the substitution of plaintiff which had been made.

■ Section 2—1108 of the Code of Civil Procedure (Code) provides, in part, that "[w]hen the special finding of fact [answer to an interrogatory] is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1108.) Here, the answer to the third interrogatory, finding that Fyffe's assault was the sole proximate cause of the injury to the minors, was inconsistent with the general verdict finding the Conference liable for the minors' injuries. In order for any negligence upon the part of an employer, such as the Conference, in the hiring or retention of an employee, such as Fyffe, to result in liability for the employer, the negligence must have been *a* proximate cause of the injuries for which damages are claimed. (*Bates v. Doria* (1986), 150 Ill. App. 3d 1025, 1031, 502 N.E.2d 454, 458-59.) If Fyffe's conduct was the *sole* proximate cause of the minors' injuries, negligence by the Conference could not have been *a* proximate cause.

Under the terms of section 2—1108 of the Code, the answer to the third interrogatory would appear to control the verdict and require entry of judgment for the Conference. However, special factors are involved here. The jury found, in answer to interrogatory No. 1, that the Conference was guilty of negligence in retaining Fyffe, and in answer to interrogatory No. 2, that the Conference should have foreseen Fyffe would commit a sexual assault on a minor. The finding that Fyffe's conduct was the sole proximate cause of the minors' injuries was not contrary to the manifest weight of the evidence, because the jury could well have determined the Conference took adequate precaution in having Fyffe counseled and should not have been held to have reasonably foreseen that Fyffe would be likely to commit the acts of sexual assault. However, if the retention of Fyffe was negligence, as found by the answer to interrogatory No. 1, and the Conference should have foreseen subsequent sexual assaults by Fyffe, as found by the answer to interrogatory No. 2, a determination that the Conference's conduct in retaining Fyffe was not *a* proximate cause of the minors' injuries would be contrary to the manifest weight of the evidence.

In *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103,

210 N.E.2d 191, an answer to an interrogatory found the defendant not negligent in a tort action based on negligence, but a general verdict found for the plaintiff and awarded damages. The finding of the interrogatory answer was contrary to the manifest weight of the evidence. The supreme court noted that the record indicated the jury was confused and held the proper procedure was to award the defendant a new trial. The *Freeman* decision is to be contrasted with the situations in *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16, where contention was made that the jury was confused when the general verdict was inconsistent with the answer to an interrogatory and that answer was supported by the evidence. The supreme court held that under those circumstances, final judgment should be entered in accordance with the answer to the interrogatory.

We deem the instant case to be more analogous to *Freeman* than to *Z. Frank, Inc.* As we have indicated, under the evidence here, the answers to the interrogatories were logically inconsistent. Moreover, here defense counsel had argued the parents of the minors were responsible for their injuries and the jury could well have thought the purpose of the interrogatory in regard to sole proximate cause concerned the question of causation as between Fyffe and the parents. The subject of causation is a tricky one which even those in the legal profession have difficulty understanding. When one defendant is charged with the direct commission of a tort, and another defendant is charged with negligence in hiring, retaining, or entrusting the person directly causing the injury, the concept of causation becomes most easily confused. In addition, we note that interrogatory No. 3 was imperfect in form. The ultimate issue was whether the conduct of the Conference in retaining Fyffe was *a* proximate cause of the injuries and not whether some other cause was the sole proximate cause. For all of these reasons, we deem the appropriate procedure here is not to have judgment entered for the Conference but to merely grant the Conference a new trial.

At the hearing on the post-trial motion, plaintiff presented affidavits of 10 jurors which stated they answered "yes" to the third interrogatory because they determined the minors' injuries were not caused by their parents, their school, or the prior existing disabilities of the minors. The circuit court properly refused to consider these affidavits, as they attempted to impeach the jury's answer to the interrogatory. *Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532, 431 N.E.2d 361.

As the Conference's other contentions concern whether the Conference should be granted a new trial, which we have already deter-

mined to be required, we consider these points only to the extent necessary to avoid confusion at the retrial.

The plaintiff called Fyffe as an adverse witness and questioned him partially as follows:

"Q. [Plaintiff's Counsel]: Your counsel is being provided to you by the Methodist Church, is it not?

A. Yes.

Q. And you aren't paying him?

A. By the insurance company for the Church.

Q. The Church paid for your attorney while you were defending these criminal charges over in Macon County, did he not?

A. Yes.

Q. They posted your bond.

A. Yes.

Q. And you used the bond money that was posted by the Church to pay your attorney over in Macon County then?

A. I think that's what happened."

The Conference moved for a mistrial because of the interjection of insurance. The circuit court instructed the jury to disregard the answer to the question as to how Fyffe came to be represented by an attorney, but denied the request for a mistrial.

■ We conclude the circuit court did not err in its denial of the mistrial. The fact Fyffe's attorney was furnished by a defendant tended to show a bias on Fyffe's part in favor of the defendant. That part of the inquiry was permissible. The court was in a better position than we are to determine whether the plaintiff intended to indicate to the jury that the Conference had liability insurance. Care should be taken to avoid a repeat of this on retrial.

For some unexplained reason, while cross-examining Fyffe, defense counsel introduced evidence that Fyffe had settled with plaintiff for a total sum of $225,000. The settlement had been in the form of a loan agreement whereby the guardian had to repay the loan only to the extent that payments were received from other tortfeasors. After the parties had rested, the court admitted the loan agreement into evidence over the objection of the Conference. Then, over objection by the Conference, but without request by the plaintiff, the court gave the following instruction.

"The evidence of a loan settlement agreement is to be considered by you as it relates to the motive and credibility of witnesses. Amounts retained pursuant to the loan settlement agreement will be credited towards any verdict returned

against the United Methodist Church by the Court after your verdict."

■ Ordinarily, the only materiality or relevance of a loan agreement concerning a party to a case is the tendency of the document to show bias of that party if that party or someone in alliance with that party testifies in favor of the plaintiff. The bias arises if that party will receive a benefit by repayment of all or part of the loan if the plaintiff wins. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 226, 412 N.E.2d 959, 966.) Here, the Conference could have demanded the admission of the loan agreement to impeach Fyffe but did not do so. The Conference had no reason to do so, because Fyffe's testimony was favorable to the Conference.

■ Ordinarily, the plaintiff would have had no right to have the loan agreement before this jury. Here, however, when the Conference had elicited that plaintiff had received a $225,000 settlement, the plaintiff was entitled to have the jury know that any sums plaintiff received from them up to the sum of $225,000 had to be returned to Fyffe. Otherwise, the jury might have concluded that any money they awarded would be added to the $225,000 already received. (See *Webb v. Toncray* (1981), 102 Ill. App. 3d 78, 429 N.E.2d 874.) Thus, the jury, if finding for the plaintiff, would have been likely to have awarded only minimal damages unless they determined the plaintiff was entitled to an award in excess of $225,000. Accordingly, after the Conference introduced evidence of settlement, the court did not commit reversible error in having the loan agreement submitted to the jury. However, the loan agreement contained various statements which were prejudicial to the Conference. A preferable method of proceeding would have been to redact those portions of the agreement.

■ No purpose was served by the instruction given concerning the loan settlement agreement. The only witness subject to impeachment for bias because of the agreement was Fyffe, and the Conference, the only party who would be damaged by bias of Fyffe toward the plaintiff, did not attempt to impeach Fyffe. The Conference maintains the instruction assumed a verdict would be rendered for the plaintiff. We do not agree. The only portion of the instruction referring to a verdict was that portion which referred to "any verdict returned against the [Conference]." By speaking of "any verdict," the instruction properly recognized that a verdict for plaintiff was not certain. Furthermore, immediately preceding the reading of this instruction, the court instructed the jury that if the jury found for the defendant, the jury would not be concerned with awarding damages.

■ When a loan settlement agreement is admitted into evidence,

the jury should be informed as to the setoff against the verdict that will result if the loan agreement does not require the plaintiff to repay the loan from the proceeds of any judgment obtained on a dollar-for-dollar basis. (See and compare *Palmer*, 82 Ill. 2d 211, 412 N.E.2d 959, with *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382.) Here, repayment was on a dollar-for-dollar basis, as was clearly evident from the loan agreement. The jury had no concern with the concept of setoff.

Finally, we consider the plaintiff's contention the court erred in allowing the motion of the Conference for summary judgment on the counts based on *respondeat superior*. The Conference maintains any error was waived because plaintiff filed no post-judgment motion seeking to set aside the summary judgment. Section 2—1202(e) of the Code provides that, in a jury case, any party seeking a new trial must make such a request in a post-trial motion, unless the prior trial was aborted because of a failure of the jury to agree. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1202(e).) Supreme Court Rule 366(b)(2)(iii) states that in a jury case "[a] party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." (107 Ill. 2d R. 366(b)(2)(iii).) Citing *Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 375 N.E.2d 433, the Conference maintains the foregoing rules bar plaintiff from raising any issue on cross-appeal.

In *Cusentino,* the cross-appellant, as well as the appellant, claimed error in the judgment entered on a jury verdict. The appellate court held error was waived for lack of a post-trial motion by the cross-appellant. Here, plaintiff claims error not in the judgment on the jury verdict, but in the prior entry of the summary judgment. Supreme Court Rule 366(b)(3)(ii) makes clear that in "nonjury cases," "[n]either the filing of nor the failure to file a post-trial motion limits the scope of review." (107 Ill. 2d R. 366(b)(3)(ii).) No case has been called to our attention which rules directly upon the requirement for a post-trial motion to preserve error for review under the circumstances here, where the summary judgment contested was entered before a jury trial, on other issues, resulting in a judgment also being appealed. Somewhat analogous to the situation here is that in cases where a court directs a verdict for a defendant at the close of the plaintiff's case. No post-trial motion is necessary to preserve error for review from such a judgment. (*Keen v. Davis* (1967), 38 Ill. 2d 280, 230 N.E.2d 859.) We hold no post-trial judgment motion by plaintiff was necessary to preserve error in its cross-appeal.

The Conference maintains assaults by Fyffe on the minors consti-

tuted a deviation from the scope of any employment he had with the Conference, thus relieving the Conference from vicarious liability. The Conference cites *Randi F. v. High Ridge YMCA* (1988), 170 Ill. App. 3d 962, 524 N.E.2d 966. There, an assault and sexual molestation by a teacher's aide on a three-year-old child was held, as a matter of law, to have occurred while the teacher's aide had deviated from the scope of her employment.

Plaintiff counters *Randi F.* with the decision in *Kigin v. Woodmen of the World Insurance Co.* (1989), 185 Ill. App. 3d 400, 541 N.E.2d 735. There, a camp counselor, while in charge of several campers and while intoxicated, allegedly gave alcohol to a 15-year-old female camper and then sexually molested her. The Fifth District Appellate Court held the allegations stated a cause of action for liability against the camp operator on a *respondeat superior* theory even if the counselor had acted outside the scope of his employment. That court relied upon, and plaintiff here relies upon, section 317 of the Restatement (Second) of Torts, which states a master is under a duty "to exercise reasonable care so to control his servant while acting outside the scope of his employment" from intentionally hurting others if:

"(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts §317, at 125 (1965).

■■ The express language of the foregoing rule and the reporter's notes affixed thereto (Restatement (Second) of Torts §317, Reporter's Notes, comment *a*, at 125 (1965)) make clear that section 317 speaks not to vicarious liability or the doctrine of *respondeat superior*, but to a duty on the part of the master to exercise care under certain circumstances. Here, the charge against the Conference was stated merely in terms of a vicarious liability arising from the existence of the master-servant relationship. The charge upon which summary judgment was entered attempted to hold the Conference responsible merely because Fyffe was its servant. The evidence defeated that charge, because it showed Fyffe acted beyond the scope of his employment. Summary judgment was proper.

We affirm the summary judgment in favor of defendant, the Conference. We reverse the judgment entered on the verdict after the jury trial and remand that portion of the cause to the circuit court of Sangamon County for retrial.

Affirmed in part; reversed in part and remanded.

KNECHT, P.J., and SPITZ, J., concur.