247 N.J. Super. 582 (1990)
589 A.2d 1082
JOHN McELROY, PLAINTIFF,
v.
GEORGE GUILFOYLE, JAMES McHUGH AND CAMDEN DIOCESE, JOINTLY, SEVERALLY, ALTERNATIVELY, DEFENDANTS.
Superior Court of New Jersey, Law Division Camden County.
Decided November 14, 1990.
*583 Anthony J. Brady, Jr., for plaintiff (Charles A. Lutz, attorney).
Martin F. McKernan, Jr., for defendants (McKernan & McKernan, attorneys).
*584 DROZDOWSKI, J.S.C.
This is defendants' motion to dismiss the complaint under R. 4:6-2(a) for lack of subject matter jurisdiction. Plaintiff, a priest and former pastor of St. Francis de Sales church in Barrington, brought this action against defendants, the former and present bishops of defendant Diocese, seeking to recover compensatory and punitive damages as a result of defendants' alleged promise to pay plaintiff's legal fees incurred in plaintiff's defense of an unrelated criminal action. Plaintiff's claims are presented under a variety of diverse theories, including "breach of contract and/or a breach of canon [sic] code and/or an intentional tort and/or negligent infliction of emotional distress."
Defendants move to strike arguing that civil courts lack subject matter jurisdiction over plaintiff's claims. Specifically defendants contend that plaintiff's claims are barred from civil court resolution by the First Amendment Free Exercise and Establishment Clauses since the issues presented require impermissible court inquiry into church doctrine and practice.

I.
This case introduces novel questions concerning the jurisdiction of secular courts over disputes between a church and its clergy members. For the reasons set forth below, I find that this court lacks jurisdiction over plaintiff's claims.
On March 9, 1985, plaintiff was ordained as a Roman Catholic priest and assigned to work as an associate pastor at St. Francis de Sales church in Barrington. On May 11, 1988, plaintiff was arrested and charged with several sexual offenses involving a minor. That same day, defendant Bishop Guilfoyle restricted plaintiff from any further exercise of his priestly ministry. Two days later, Guilfoyle suspended plaintiff from all priestly functions. Plaintiff received his employment benefits for the rest of the month but further payments were *585 discontinued. On October 14, 1989, plaintiff was convicted of the aforementioned charges. That matter is now on appeal.
On May 8, 1990, plaintiff filed his complaint against defendants George Guilfoyle, James McHugh and the Diocese of Camden. The vagueness of plaintiff's claims necessitated limited discovery in order to clarify the gravamen of the complaint. Plaintiff's allegations are now clear. Plaintiff contends that Guilfoyle, with the authority to bind the Diocese, promised to handle plaintiff's legal affairs, including the payment of plaintiff's legal fees, involved in plaintiff's defense of the criminal charges. Plaintiff alleges that defendants have failed to honor this obligation and demands compensatory and punitive damages of $2,500,000.
Guilfoyle, in his certification, states that he had promised, on behalf of the Diocese, to pay plaintiff's legal fees in defense of a prior, unrelated theft charge and that the Diocese did, in fact, loan plaintiff the money to defend the theft charge. Guilfoyle denies having made any representations concerning the sexual offenses and, indeed, states that such promises would have been unauthorized without the consent of the diocesan finance council.

II.
Generally, civil courts have no jurisdiction over, and no concern with, spiritual matters and the administration of church affairs that do not affect the civil or property rights of individuals. Chavis v. Rowe, 93 N.J. 103, 109, 459 A.2d 674 (1983). More specifically, the relationship between a priest and his diocese is not to be interfered with by civil courts, thus permitting priests to be selected, ordained, disciplined or discharged for reasons which the church deems proper. Minker v. Baltimore Annual Conference, 894 F.2d 1354, 1357 (D.C. Cir.1990).
However, temporal matters of a church affecting civil, contract or property rights may be resolved in civil courts. *586 Chavis v. Rowe, supra, 93 N.J. at 109-110, 459 A.2d 674; Minker v. Baltimore Annual Conference, supra, 894 F.2d at 1358-1359 ("Federal Circuit Courts of Appeal have held that the church is not above the law and may be held liable for valid contracts.")
Thus, secular courts may decide civil disputes between a religious body and its members or its clergy if those disputes involve purely secular issues and can be resolved without entanglement with matters of faith, discipline or doctrine. In such cases, courts are to apply neutral principles of law to the facts presented. Welter v. Seton Hall University, 243 N.J. Super. 263, 275, 579 A.2d 332 (App.Div. 1990).
Here, plaintiff argues that this court should apply neutral principles of contract law in determining whether defendants failed to honor their obligations. Under this approach the court's inquiry would be limited to the purely secular issues of whether defendants made and subsequently dishonored certain promises concerning the payment of plaintiff's legal fees.
However, plaintiff's position ignores both the relationship between the parties and the nature of the alleged conduct underlying plaintiff's complaint. Defendants' purported obligation to support plaintiff's defense of a criminal action is intertwined with, and dependent upon, plaintiff's tenure as a priest. The Code of Canon Law of the Roman Catholic Church details the reciprocal duties and obligations among clergy members. The code also sets forth the appropriate sanctions for failure to honor these obligations. In short, the Code of Canon Law governs the relationship between clergy members, lending that relationship an ecclesiastical quality which permeates this action.
New Jersey courts have consistently followed the guidance of the United States Supreme Court in holding that secular courts may not interfere with a church's religious determinations concerning questions of discipline, faith or ecclesiastical law. Welter v. Seton Hall University, supra, 243 N.J. Super. at 273, *587 579 A.2d 332; See Watson v. Jones, 80 U.S. 679, 681-682, 20 L.Ed. 666, 676 (1872). The intrusion of civil courts into the administration and polity of the church in attempting to define the obligations of clergy members would threaten the freedom of the church from secular entanglement. Alicea v. New Brunswick Theological Seminary, 244 N.J. Super. 119, 133-134, 581 A.2d 900 (App.Div. 1990). Indeed, such an inquiry into the history and customs of the church in defining the relationships between clergy members would constitute an "`establishment of religion' with a vengeance." Ibid. quoting Maryland and Virginia Eldership v. Church of God at Sharpsburg, 254 Md. 162, 254 A.2d 162, 170 (Md.Ct. 1969), dism. for want of a substantial federal question 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970).
While plaintiff urges that this is a secular matter requiring the simple application of common law contract principles, plaintiff has not clearly delineated how his claims are divorced from ecclesiastical issues. In describing the gravamen of his complaint, plaintiff relies both on Guilfoyle's verbal promise of support and the church's preexisting similar duty. In order to reach the contention that defendants have not honored these obligations, a civil court would necessarily inquire into the nature (religious or secular) of these alleged obligations. This inquiry would, of course, involve a searching and detailed exploration of the doctrine and practice of the Roman Catholic Church in order to determine the existence of such obligations. Civil courts are enjoined from such inquiry by the First Amendment Establishment and Free Exercise Clauses. Presbyterian Church v. Hull Memorial Presbyterian Church, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969).
Accordingly, a determination of plaintiff's claims would involve more than simply the secular questions of whether such promises were made and subsequently dishonored. Rather, "plaintiff's complaint links the circumstances of his contractual rights and alleged breaches to his ... divestment of ecclesiastical endorsement." United Methodist Church v. White, 571 *588 A.2d 790, 796 (D.C.App. 1990). The resolution of such disputes is properly for church officials. Ibid.
Moreover, assuming that Guilfoyle's promise of support was completely divorced from religious considerations, whether Guilfoyle had the authority to bind the other defendants by such promises remains an ecclesiastical matter, requiring inquiry into the structure of the Roman Catholic Church regarding the relationship between a bishop and his diocese. An agency relationship between a bishop and his diocese may only be determined by reference to church law. See Minker v. Baltimore Annual Conference, supra, 894 F.2d at 1356 (A determination of "whose voice speaks for the church is per se a religious matter.").
In sum, plaintiff's claims are replete with ecclesiastical issues, the resolution of which require impermissible court inquiry into the doctrine and practices of the Roman Catholic Church. These entanglements between religious and secular issues compel this court to refrain from exercising jurisdiction over this matter.
The court's ruling does not leave plaintiff remediless. Plaintiff may pursue his claims administratively to the Congregation for the Clergy, whose decision is subject to review by the Apostolic Signatura, the church's supreme court. Plaintiff may also pursue his claims judicially to the Tribunal of the Diocese of Camden. Review of the tribunal's decision is through the Metropolitan Tribunal of the Archdiocese of Newark, then to the Rota (the church's intermediate appellate court) and then to the Apostolic Signatura. Both of these administrative and judicial processes afford a successful plaintiff the remedies sought in this action.[1] Plaintiff's pursuit of these remedies is not foreclosed by this ruling. Motion granted.
NOTES
[1] Plaintiff's cause of action is authorized by the Roman Catholic Code of Canon Law. See The Canon Law Society of America, The Code of Canon Law (1985) cc. 128 commentary at 41.