Ron BLADEN and Pam
Bladen, Appellants,

v.

FIRST PRESBYTERIAN CHURCH OF
SALLISAW, Oklahoma, a domestic
corporation, Appellee,

and

Reed Montgomery, an individual,
Defendant.

No. 76870.

Supreme Court of Oklahoma.

July 20, 1993.

Clark S. Wood, Sallisaw, for appellants.

David R. Scott, McGivern, Scott, Gilliard, McGivern and Robinson, Tulsa, for appellee.

SUMMERS, Justice.

This is a suit by a married couple against their church and former minister. Although several theories of liability are advanced, all grow out of the fact that the preacher initiated and consummated an adulterous affair with the wife. This occurred within a few months after marital counseling with the wife had ended, but while the preacher was still providing such counseling to the husband.

The trial court sustained the church's motion for summary judgment, determining that the law of Oklahoma does not allow such a suit against a church. The Court of Appeals reversed and remanded, and we have granted certiorari. We now affirm the trial court.

The husband was active in the local church as a governing elder. His wife was the church secretary. The wife and husband received marital counseling, and after their counselor moved they decided to seek counseling from their minister, who agreed. In the summer of 1985 they received such counseling in some five to ten sessions at both the church and in their home. The joint counseling was discontinued in September 1985 and the wife was not counseled further. The husband continued the counseling, although it was of a non-scheduled, informal nature, and was unbeknownst to the wife.

In January or February of 1986 the wife and the minister commenced an affair that

lasted into June of that year. She stated that to her knowledge no one in the church knew of the affair, and that the church would not have condoned it. The affair ended when her husband discovered it in June of 1986 and confronted her and the minister.

When the husband communicated this discovery to others the church determined it no longer needed the wife's services as a secretary, and the minister resigned. The husband and wife separated for a time, and then reunited and obtained counseling independent of the church.

The husband's claim was against the minister for giving him marital counseling while having an affair with his wife. He claimed that the particular advice given to him was to aid the minister in the seduction, and was bad advice for marital counseling. He stated that he couldn't remember all of the advice he received, but he did remember that he was advised in October 1985 to give his wife less attention. He stated that he tried it but it didn't work.

The minister stated that providing marital counseling to church members was one of his duties of a minister, and that he had counseled other church members with marital problems. He stated that his advice to the husband included prayer, involvement in the church school, and things to ease the tension at home. The minister also admitted that at a prior post at a church in Texas he had had a consensual affair with a church secretary.

One claim against the church was that it knew or should have known about the affair and the past affair in Texas, and that the church negligently hired and supervised the minister. The wife stated that her claim against the church was because of the affair, and because the church had not offered her additional counseling after the affair was discovered. Both claimed that they suffered emotional distress because of the incident. They claimed that as the employer of the minister, the church should be held accountable for his actions.

The church responded that it did not know of the affair or of the prior one in Texas, and that it did not condone such goings on. The church also stated that marital counseling was not one of the duties of a minister of the Presbyterian Church, and that the minister was acting beyond the scope of his contract by providing such. However, the minister stated that he was not subject to any higher authority as to the content of his religious instruction.

The husband's and wife's second amended petition made the allegations referred to herein concerning the affair, but made no allegations as to any act of the church injurious to them independent of those of the minister. However, in their response to the defendants' motions to dismiss the plaintiffs argued that "The plaintiffs in the present action are clearly not bringing an action for criminal conversation or alienation of affection; but their claim is based totally upon the Church's failure to properly supervise its employee; and upon the employee's breach of fiduciary duty in misusing the confidential information obtained during counseling sessions." O.R. at 84. The motions to dismiss were overruled, but when the church moved for summary judgment, the court sustained it, and dismissed the church from the suit on November 29, 1990.[1] The question, then, is whether on these facts the couple may proceed to trial against the church.

## CHURCH LIABILITY GENERALLY UNDER THE FREE EXERCISE CLAUSE

■ The Free Exercise Clause of the First Amendment may shield a church from tort liability on a parishioner's suit when the church's act occurs in the context of the church's ecclesiastical jurisdiction.[2]

---

1. Although the order left the minister in the suit the order was nonetheless a judgment and appealable under pre–1991 law. See the explanation of *Oklahomans for Life, Inc. v. State Fair,* 634 P.2d 704 (Okl.1981) in *Grider v. USX Corp.,* 847 P.2d 779, 786 (Okl.1993).

2. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law

In *Guinn v. Church of Christ of Collinsville*, 775 P.2d 766 (Okl.1989) we explained that the plaintiff's recovery on the basis of the torts of outrage and invasion of privacy could not be sustained in a civil court when the acts alleged to be tortious were the ecclesiastical disciplinary acts of a church against its member. We followed this rule in *Hadnot v. Shaw*, 826 P.2d 978 (Okl. 1992).

 The First Amendment does not shield a religious institution from all tort liability. Tort liability for a church may arise from acts unrelated to religious practices protected by the First Amendment. For example, where the degree of care a church uses in maintaining property is unrelated to its religious beliefs and practices, and a person is damaged as a result of the church's maintenance of the property, a tort action may proceed.[3] Some jurisdictions have determined that a church may likewise be liable under some circumstances for the intentional torts of its employees.[4] Similarly, tort liability may be imposed upon the Elders of a church for tortious acts beyond the constitutionally protected religious practices of a church.[5]

respecting an establishment of religion, or *prohibiting the free exercise thereof....*" U.S. Const. 1 Amendment, (emphasis added). The Free Exercise Clause is applied to the States through the Fourteenth Amendment. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* —— U.S. ——, ——, 113 S.Ct. 2217, 2225, 124 L.Ed.2d 472 (1993).

3. *See e.g., Cox v. Thee Evergreen Church,* 836 S.W.2d 167 (Tex.1992), (slip and fall action by member against church organized as unincorporated association); *Davis v. Church of Jesus Christ of Latter Day Saints,* 244 Mont. 61, 796 P.2d 181 (1990), (slip and fall claim); *Heath v. First Baptist Church,* 341 So.2d 265, (Fla.App.), *cert. denied,* 348 So.2d 946 (Fla.1977), (same); *Fintak v. Catholic Bishop of Chicago,* 51 Ill. App.3d 191, 9 Ill.Dec. 223, 366 N.E.2d 480 (1977), (same); *Macedonia Baptist Church v. Gibson,* 833 S.W.2d 557 (Tex.App.–Texarkana 1992), (negligent installation of lightning rod and cable resulting in personal injury after lightning strike); *Crocker v. Barr,* 305 S.C. 406, 409 S.E.2d 368 (1991), (unincorporated religious association was amenable to negligence suit by a member of the association for injuries sustained by fall). *But see, Calvary Baptist Church v. Joseph,* 522 N.E.2d 371 (Ind.1988), (church member injured during church roof repair project could not bring action against church organized as an unincorporated association).

4. *Meroni v. Holy Spirit Association for the Unification of World Christianity,* 119 A.D.2d 200, 506 N.Y.S.2d 174, 176 (1986), (explaining that a church may be liable for the intentional tortious conduct on behalf of its officers or members); *Gallas v. Greek Orthodox Archdiocese of North and South America,* 154 Misc.2d 494, 587 N.Y.S.2d 82, 86 (Sup.Ct.N.Y.County 1989), (same); *Davis v. Black,* 70 Ohio App.3d 359, 591 N.E.2d 11 (1991), (discharged church secretary could bring claims for (1) sexual harassment against pastor, (2) retaliatory discharge against church arising from sexual harassment complaint, and (3) intentional infliction of emotional distress and defamation against church and pastor); *Broderick v. King's Way Assembly of God Church,* 808 P.2d 1211 (Alaska 1991), (trial court incorrectly granted summary judgment in favor of church on negligent supervision and hiring claim of church volunteer who allegedly molested children); *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991), (church, as the employer of the pastor, could be vicariously liable for the nonconsensual sexual conduct of a pastor if the conduct could have been reasonably foreseen by the church); *J. v. Victory Tabernacle Baptist Church,* 236 Va. 206, 372 S.E.2d 391 (Va.1988), (pursuant to negligent hiring tort the church and pastor were subject to a tort claim based upon the negligent hiring of church employee who had been previously convicted of aggravated sexual assault on a young girl and who had allegedly raped and sexually assaulted child/member of the church). *But see, Mount Zion State Bank & Trust v. Central Illinois Annual Conference of United Methodist Church,* 198 Ill.App.3d 881, 145 Ill.Dec. 368, 556 N.E.2d 1270, *appeal denied,* 135 Ill.2d 558, 151 Ill.Dec. 384, 564 N.E.2d 839 (1990), (pastor molesting minors acted, as a matter of law, beyond the scope of employment and church conference was not liable under doctrine of *respondeat superior* ).

5. *Guinn v. Church of Christ of Collinsville,* 775 P.2d 766, 785–786 (Okl.1989). *See Schmidt v. Bishop,* 779 F.Supp. 321, 327 (S.D.N.Y.1991), (court gave the example of a tort claim against the clergy for behavior such as negligent operation of Sunday School van, and other misconduct not within the protection of the First Amendment, because unrelated to religious efforts of the cleric); *Hester v. Barnett,* 723 S.W.2d 544, 552 (Mo.App.1987), (intentional torts of cleric are actionable and intentional tort of alienation of affections of spouse was proper claim since that tort was cognizable in jurisdiction). Ministers may be prosecuted for criminal fraud for acts relating to the solicitation of funds for a specific purpose. *See U.S. v. Bakker,* 925 F.2d 728 (4th Cir.1991), where a minister was convicted of mail fraud and wire fraud for sale of real estate partnerships through religious corporation when almost all of funds generated

■ The parties, of course, agree that the affair had nothing to do with the doctrine of the church. Although there is a dispute between the church and the minister as to whether marital counseling is one of the duties of a minister, there is no doubt that the minister as well as the plaintiffs considered marital counseling as one of the duties of the minister. The husband's claims against the church are based upon theories that the church negligently supervised the minister, and is liable for the acts of its employee pursuant to *respondeat superior*.[6] Because the claims against the church are intertwined with, and partially dependent upon, those against the minister, we must examine the claims against the minister.

## CLERGY MALPRACTICE

Many jurisdictions have recognized claims for therapist malpractice when a therapist engages in sexual conduct with a patient of the therapist. For example, one court has stated that "Where a therapist mishandles transference and becomes sexually involved with his patient, courts commonly hold such action to constitute malpractice." *Lenhard v. Butler*, 745 S.W.2d 101, 103 (Tex.App.—Fort Worth 1988). Similar language is used in *Simmons v. United States*, 805 F.2d 1363, 1365 (9th Cir.1986), where the court stated that "When the therapist mishandles transference and becomes sexually involved with a patient, medical authorities are nearly unanimous in considering such conduct to be malpractice." Other courts agree.[7] Some jurisdictions have recognized claims for negligent supervision for this type of malpractice of an employee and allowed claims under the theory of *respondeat superior*. *Andrews v. United States*, 732 F.2d 366, 371 (4th Cir.1984), (claim for negligent supervision against doctor for malpractice of Physician's Assistant); *Cotton Kambly*, 101 Mich.App. 537, 300 N.W.2d 627 (1980), (*respondeat superior* claim).

Courts do not appear to have been as quick in recognizing a malpractice action for other professionals who give advice and then engage in sexual intimacy with their patients or clients. For example, in *Simmons v. United States, supra*, the court stated:

We note that courts do not routinely impose liability upon physicians in general for sexual contact with patients. *See*

from sale were diverted to other uses and not for partnership real estate construction. See also the discussion of *United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944) in S. Senn, *The Prosecution of Religious Fraud*, 17 Fla.St.L.Rev. 325 (1990). One author has argued that civil fraud would be an available remedy if the circumstances would support a criminal fraud conviction. *Id. See also* M. Ball, *The Unfree Exercise of Religion*, 20 Cap. L.Rev. 39 (1991); O. Thomas, *Restoring Free Exercise and Preventing Religious Fraud: A Response to Milner Ball*, 20 Cap.L.Rev. 67 (1991).

**6.** The doctrine of *respondeat superior* is used to make the principal liable for the acts of the servant or agent of the principal. *Texaco, Inc. v. Layton*, 395 P.2d 393 (Okl.1964); *Mid–Continent Pipeline Co. v. Caruthers*, 267 P.2d 568 (Okl.1954).

**7.** *See St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698, 701–702 (Minn.1990), (psychologist malpractice based upon mishandling transference); *Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (Ill.App. 2 Dist.1985), (social worker malpractice); *Rowe v. Bennett*, 514 A.2d 802 (Me.1986), (same); *Corgan v.*

*Muehling*, 167 Ill.App.3d 1093, 118 Ill.Dec. 698, 701–702, 522 N.E.2d 153, 156–157 (Ill.App. 1st Dist.1988), (cited jurisdictions recognizing malpractice by psychologists, psychiatrists, and therapists, when counselor mishandles transference and becomes sexually involved with a patient), *affirmed* by opinion also recognizing action in *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 494, 574 N.E.2d 602, 607 (1991); *Sisson v. Seneca Mental Health Council*, 185 W.Va. 33, 404 S.E.2d 425, 429 (1991), (collecting opinions from other jurisdictions that support the validity of a malpractice action where a counselor engages in sexual intimacy with a patient during therapy); *MacClements v. LaFone*, 104 N.C.App. 179, 408 S.E.2d 878, 880 (1991), *review denied*, 330 N.C. 613, 412 S.E.2d 87 (1992), (mishandling of transference in therapeutic relationship is malpractice); *Andrews v. United States*, 732 F.2d 366, 371 (4th Cir.1984), (Physician's Assistant who counseled patient for depression committed medical malpractice by sexual conduct with patient that was explained as part of patient's therapy); *Cotton v. Kambly*, 101 Mich.App. 537, 300 N.W.2d 627 (1980), (medical malpractice claim could be brought for doctor inducing patient to engage in sexual conduct with doctor under the guise of psychiatric treatment).

794

*e.g., Smith v. St. Paul Fire and Marine Insurance Co.,* 353 N.W.2d 130, 132 (Minn.1984).

The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, or a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon. *See* A. Stone, M.D., *Law, Psychiatry, and Morality,* 199 (1984).

*Id.* 805 F.2d at 1366.

The *Simmons* court determined that a malpractice claim was based upon a professional relationship that utilized and misused the transference phenomenon as a professional method of treatment. That court explained it this way:

Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is "generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past." ... Transference is crucial to the therapeutic process because the patient "unconsciously attributes to the psychiatrist or analyst those feelings which he may have repressed towards his own parents.... [I]t is through the creation, experiencing and resolution of these feelings that [the patient] becomes well." ... "Understanding of transference forms a basic part of the psychoanalytic technique."

*Id.* 805 F.2d at 1362–1363, [quoting different authorities and material omitted from the original].

This view was cited with approval in *St. Paul Fire & Marine Ins. Co. v. Love,* 447 N.W.2d 5 (Minn.App.1989), where the court explained the *Simmons* opinion, and "that the centrality of the transference to thera-

py makes it impossible to separate an abuse of transference from the treatment itself." *Id.* 447 N.W.2d at 8. The court then quoted an expert for the proposition that the transference phenomenon was part of the treatment which included clarifying the phenomenon to the patient and using it for the patient's benefit. *Id.* 447 N.W.2d at 9. The court also explained that "it is the mishandling of transference, and not the resulting sexual conduct, which gives rise to the alleged malpractice." *Id.*

However, a psychiatrist's sexual relations with the spouse of his or her patient has been held to violate a relevant standard of care for that profession apart from the transference mechanism. *Mazza v. Huffaker,* 61 N.C.App. 170, 300 S.E.2d 833 (1983), *disc. rev. denied,* 309 N.C. 192, 305 S.E.2d 734 (1983). *See also Mazza v. Medical Mutual Insurance Company of North America,* 311 N.C. 621, 319 S.E.2d 217 (1984), (malpractice policy covered malpractice claims in *Mazza v. Huffaker, supra*). But Courts have explained that the basis of the malpractice claim against a therapist generally is because of a breach of the "trust relationship" between the therapist and patient, and that this "trust relationship develops because of the emotional bond that forms between a therapist and his patient, known as the transference phenomenon...." *Sisson v. Seneca Mental Health Council,* 185 W.Va. 33, 404 S.E.2d 425, 429 (1991).

■ Thus, claims for negligence against psychologists, psychiatrists, and therapists are based upon a mishandling of a specific tool used by those professionals in the course of treatment, and the departure from the professional norm is regarded as a type of malpractice for those professionals. This analysis suggests that professionals who do not use the transference mechanism are not subject to the same claim of counseling malpractice arising from the consensual sexual conduct of adults unless the conduct violates some other professional standard of conduct.[8]

---

8. *Smith v. St. Paul Fire and Marine Insurance Co.,* 353 N.W.2d 130, 132 (Minn.1984), (medical

doctor's sexual assaults on the minors were not "professional services" under professional liabil-

Claims for clergy malpractice for improper sexual conduct have so far been rejected by the courts. For example, one court has stated with regard to clergy malpractice: "To date, no court has acknowledged the existence of such a tort." *Destefano v. Grabrian,* 763 P.2d 275, 285 (Colo.1988), (per Erickson, J., with two Justices concurring and four Justices specially concurring); Other courts agree. *Strock v. Pressnell,* 38 Ohio St.3d 207, 527 N.E.2d 1235, 1239 (1988), (affair during counseling); *Handley v. Richards,* 518 So.2d 682 (Ala.1987), (Maddox, J., concurring specially, and explaining one sentence opinion affirming dismissal where the minister had an affair with the wife during counseling); *Schmidt v. Bishop,* 779 F.Supp. 321, 327 (S.D.N.Y.1991), (construing New York law as not allowing claim for clergy malpractice).

The rejection of clergy malpractice in sexual misconduct cases has led plaintiffs to argue and courts to examine other tort theories. Three cases are usually cited, only one of which involves a suit against the clergy.[9] In *Destefano v. Grabrian, supra,* the court reasoned that a priest acting as a marriage counselor to a husband and wife (1) was in a fiduciary relationship to the couple, (2) owed the couple a duty to not engage in conduct that might harm the relationship, (3) breached the duty when he had sexual intercourse with the wife, and (4) was subject to a civil action brought by both the husband and wife for violating this duty. *Id.* 763 P.2d at 284. One court has followed this view with a slight modification. *Weaver v. Union Carbide Corp.,* 180 W.Va. 556, 378 S.E.2d 105 (1989).

In *Weaver* the ex-wife brought suit alleging malpractice and intentional infliction of emotional distress because her husband had an affair with and subsequently married his marriage counselor. The court stated that had both husband and wife been counseled an action could be brought by both against the counselor. It held that the action by the spouse not subject to the sexual intimacy would have been allowed under a loss of consortium theory flowing from a breach of the trust relationship. *Id.* 378 S.E.2d at 107. However, in *Weaver* the court determined that because the wife was not counseled her action was nothing more than an alienation of affections suit, and not cognizable in that jurisdiction.

In *Horak v. Biris,* 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (Ill.App. 2 Dist. 1985) the social worker counseled the husband and wife while having an affair with the wife. The husband brought the action, and the court held that it would recognize an action for social worker malpractice based upon the mishandling of psychological principles. The court's discussion included the observation that a breach of a fiduciary duty could be an independent tort, the social worker was in a position of trust, and a violation of the trust constituted a breach of the fiduciary relationship. *Id.* 474 N.E.2d at 17.

Other courts have declined to use this fiduciary or trust theory for various reasons.[10] For example, in *Schmidt v. Bishop, supra,* the court stated:

Second, in analyzing and defining the scope of a fiduciary duty owed persons by their clergy, the Court would be confronted by the same constitutional difficulties encountered in articulating the generalized standard of care for a clergyman required by the law of negligence.... Third, as with her negligence

ity policy and were not part of a medical treatment); *Simmons v. United States,* 805 F.2d 1363, 1365 (9th Cir.1986), (sexual misconduct by professionals not utilizing transference mechanism does not usually result in liability); *St. Paul Fire & Marine Ins. Co. v. Love,* 447 N.W.2d 5, 9 (Minn.App.1989), *affirmed,* by opinion, 459 N.W.2d 698 (1990), (same).

9. *Destefano v. Grabrian,* 763 P.2d 275, 285 (Colo. 1988), (per Erickson, J., with two Justices concurring and four Justices specially concurring);

*Weaver v. Union Carbide Corp.,* 180 W.Va. 556, 378 S.E.2d 105 (1989); *Horak v. Biris,* 130 Ill. App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (Ill. App. 2 Dist.1985).

10. One court has stated that a trust relationship need not be shown where the victim is a minor because the incident is not consensual. *Sisson v. Seneca Mental Health Council,* 185 W.Va. 33, 404 S.E.2d 425, 429 n. 7 (1991).

claim, Ms. Schmidt's fiduciary duty claim is merely another way of alleging that the defendant grossly abused his pastoral role, that is, that he engaged in *malpractice*. *MacDonald [v. Clinger] supra,* [84 A.D.2d 482] 446 N.Y.S.2d [801] at 805–06 [(1982)] (Simmons, J., concurring) (plaintiff's claim of unauthorized disclosure of confidences by psychiatrist was claim for malpractice rather than for breach of fiduciary duty).

*Id.* 779 F.Supp. at 326, (emphasis in original and citation omitted).

In *Strock v. Pressnell, supra,* a married couple was experiencing marital problems, and went to a Lutheran minister for marital counseling. During the final weeks of counseling the minister engaged in consensual sexual relations with the wife. The husband later brought an action against the minister and the church. The court explained that the torts of alienation of affections and criminal conversation had been abolished in Ohio, and stated with regard to the fiduciary theory of recovery:

> Indeed, a fundamental principle of the law of *all* torts is that a legal right must exist and that this right must be violated in order to warrant redress. "[T]here can be no redress for some claimed tortious act unless the party (or parties) sought to be charged was guilty of some act that the law regards as wrongful." Speiser, Krause & Gans, The American Law of Torts (1983) 3, Section 1:10.

> Because R.C. 2305.29 abolished the torts of alienation of affections and criminal conversation, any legal right that a spouse may have had under these common-law actions has been abrogated and, thus, there can be no violation of a nonexistent right. Therefore, Pressnell is not liable for breach of fiduciary duty, fraud, misrepresentation, or nondisclosure.

*Id.* 527 N.E.2d at 1243–1244, (emphasis in original).

We need not determine if the fiduciary theory applies to the facts before us, because we agree with the Ohio court that the underlying conduct at issue does not invade a legally recognized right of the husband.

■ In *Lynn v. Shaw,* 620 P.2d 899 (Okl. 1980) we explained that criminal conversation[11] and alienation of affections have been legislatively abolished in Oklahoma.[12] Later in *Wilson v. Still,* 819 P.2d 714 (Okl. 1991) we acknowledged that although the plaintiff's petition alleged "intentional infliction of emotional distress" the conduct upon which the claim was based amounted to an alienation of affections suit, and failed to state a cognizable claim. *Id.* 819 P.2d at 716. So too, in this case the husband's claim of breach of a fiduciary relationship by the affair is a claim of injury to the marital relationship that is legislatively barred by 76 O.S.1991 § 8.1. We conclude that the husband's claims arising from the affair are not cognizable.

The husband also claims that he received bad advice. The wife in the case before us testified as to the differences between her former secular marriage counselor and the religious counseling given by the minister. In *Strock v. Pressnell, supra,* the court explained that courts are reluctant to recognize a tort for the advice of a minister:

> The reluctance of courts to embrace the tort of clergy malpractice may be attributed to the many, and often complex, questions that arise under it. For example, what exactly are the "professional services" rendered by a cleric? And does the standard of the professional vary with the ecclesiastical office? In other words, is a rabbi, priest, pastor, or

---

**11.** "Criminal conversation" was therein described thus:

> The foundation of the action is tortious injury to marital rights by invasion of the conjugal relationship. Recovery is granted on the basis of loss of consortium and services, injury to social position, impairment to family honor and mental suffering. *Lynn v. Shaw,* 620 P.2d at 901–902.

**12.** 76 O.S.1991 § 8.1:

> Alienation of affections or seduction—Civil action—Abolition
> From and after the effective date of this act, the alienation of the affections of a spouse of sound mind and legal age or seduction of any person of sound mind and legal age is hereby abolished as a civil cause of action in this state.

lay elder held to the same standard of care regardless of training or wide variances in the authority and obligation of religious offices? Also, where a "professional service," such as the marriage counseling involved in this case, is not unique to the cleric, should the cleric be held to the same duty of care as secular counselors. Finally if a legal duty is imposed on clergy to perform or not to perform in a particular way, will this clash with the religious beliefs of some faiths and thus violate the Free Exercise Clause of the First Amendment to the United States Constitution?

*Id.* 527 N.E.2d at 1239.

■ While one author has argued that family counseling by the clergy frequently involves both secular and religious aspects, another author has argued that pastoral counseling is solely a religious activity. *Destefano v. Grabrian,* 763 P.2d at 285 n. 10, [comparing Note, *Clergy Malpractice: Taking Spiritual Counseling Conflicts Beyond Intentional Tort Analysis,* 19 Rutgers L.J. 419, 437 (1988) and Comment, *Made Out of Whole Cloth? A Constitutional Analysis of the Clergy Malpractice Concept,* 19 Cal.W.L.Rev. 507, 516 (1983) ]. Once a court enters the realm of trying to define the nature of advice a minister should give a parishioner serious First Amendment issues are implicated. We decline to determine the nature of the advice a minister must give during counseling sessions with a parishioner, and we decline to recognize a claim for bad advice from a minister under the facts before us.

### SEDUCTION AND THE FAILURE TO PROVIDE COUNSELING

■ The wife's claims are based upon the affair and because the church did not provide marital counseling to help her and her husband after the affair was discovered. Along with the action for alienation of affections this state has abolished the civil action for seduction. 76 O.S.1991 § 8.1. We are not at liberty to recognize a cause

of action by the wife against her minister for engaging in a consensual sexual affair.

■ The plaintiffs finally ask us to declare that a civil court may impose a requirement that a particular denomination should provide marital counseling to its parishioners under certain circumstances or suffer the consequence of civil damages. The type of counseling (or its absence) a particular sect or denomination chooses to select and provide for its adherents in response to a minister having an affair with a parishioner is a matter of ecclesiastical concern, and not within the jurisdiction of a civil court to prescribe. In *Fowler v. Bailey,* 844 P.2d 141 (Okl.1992) we explained that civil courts do not possess ecclesiastical jurisdiction. The allegation of a lack of church-provided post-affair marital counseling to its parishioners is not a recognized claim for the civil courts.

### SUMMARY

■ Neither the claims by the husband nor the wife against the minister are cognizable in Oklahoma. Thus, their claims against the church under the doctrine of *respondeat superior* cannot be heard. *Shell Petroleum Corp. v. Wilson,* 178 Okl. 355, 65 P.2d 173, 176 (1935); *Consolidated Gas Utilities Co. v. Beatie,* 167 Okl. 71, 27 P.2d 813, 814 (1933); *Chicago, R.I. & P. Ry. Co. v. Austin,* 43 Okl. 698, 144 P. 1069 (1914). Because their claims against the minister also serve as the basis for the claims against the church for its negligent hiring and supervision of the minister, that claim is also not cognizable. *Strock v. Pressnell,* 527 N.E.2d at 124; *Sisson v. Seneca Mental Health Council,* 404 S.E.2d at 430. We therefore need not reach the First Amendment issues that would necessarily be implicated when civil courts attempt to define the nature of employment criteria a church should or should not use in selecting individuals for ecclesiastical office, or in the process of conferring ecclesiastical credentials.[13]

**13.** *See McElroy v. Guilfoyle,* 247 N.J.Super. 582, 589 A.2d 1082, 1083 (1990); *McDonnell v. Episcopal Diocese of Georgia,* 191 Ga.App. 174, 381

S.E.2d 126, 128 (1989), *cert. denied,* 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); *Eckler v. Gen. Council of Assemblies of God,* 784

The opinion of the Court of Appeals is vacated. The judgment of the District Court granting summary judgment and dismissing the action against the church is affirmed.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS and WATT, JJ., concur.

HARGRAVE, J., concurs in result.

KAUGER, J., concurs in part; dissents in part.

ALMA WILSON, J., dissents.

S.W.2d 935 (Tex.App.—San Antonio 1990, writ denied).